193.    Ochei repeatedly consulted an attorney to review these court papers and to seek legal representation.  Of all these court papers, only one for Hold-Over Dwelling was actually filed in court at the Civil Court of The City of New York, Part A, Room 523.

194.    Pursuant to this Hold Over proceeding, Ochei appeared in court on the following dates: 1) May 28, 2008; 2) June 20, 2008; and 3) July 24, 2008.  On the last date in Court, a default judgment was issued against the landlord for failing to respond to Ochei's motion and also for failing to appear in court on this court date, July 24, 2008 (Exhibit E).

195.    The landlord repeatedly caused or permitted acts or omissions that substantially interfered with or disturbed the comfort, peace or quiet of Ochei as a tenant.

196.    All these lawsuits listed above were frivolously pursued with the intention to interfere with the comfort, peace, and quiet of Ochei as a tenant as Ochei's landlord had no legal basis for serving any legal notice or pursuing any lawsuit against Ochei.

197.    The above cited "RENT OWED" is part of landlord's acts of harassment against the plaintiff.

198.    The above-mentioned events including acts of initiating frivolous lawsuits, instigating physical attacks and police arrest, are simply repeat of similar pattern of harassments between 1988 and the mid 1990s.

199.    Similar to the pattern of events between 1988 and the mid 1990s, on information and belief, since around 2006, the landlord began renting the rooms out to persons who were masquerading as homeless couples residing in the building on transitional basis.  But in reality, some of these couples were thugs that were placed in the subject premises to terrorize the place by among other things,

        (a)    playing very  loud "disco" like and heavy instrumental music with stereo sound system,

(b)    clogging and filling up the toilet bowl,

(c)    blocking plaintiff's access to the bathroom by repeatedly occupying or pretending to occupy the bathroom by closing the bathroom door and running the shower even when not in use,

(d)    flooding and littering the bathroom floor with large pool of water and used toilet tissues,

(e)    making loud vocal sounds in the hallway at all hours, including midnights, and

(f)    repeatedly overloading the electrical power system with heavy appliances thereby causing frequent power outage, and long interruption of electricity.

200.    Following these repetitive violations of the housing code, including, constant power outage, lack of heat and hot water, and constant confrontation with, and threats of arrest by police officers who responded to Ochei's calls to 311 and 911, finally on February 4, 2009, Ochei commenced an HPD action against her landlord in the housing court.

201.    In addition to her appearances at the criminal court in 2009, Ochei made numerous court appearances at the housing court before Ochei's landlord was finally fined for the most serious code violation (Exhibit G).

202.    Plaintiff has also had occasions where some of these so called tenants gathered in the hallway and started making derogatory remarks and insulting comments as part of ongoing attempts to provoke confrontation.

203.    At one incident, one of these couples physically confronted the plaintiff inside the cubicle-like bathroom entrance as the female partner crowded plaintiff in front of the bathroom door while the male companion stood and kept watch of the hallway.

204.    Subsequent to the above-referenced incident, the male companion began stalking

Ochei. This prompted Ochei to file numerous police report through the 311, and a police lieutenant from the 18 precinct visited the premise and spoke to this male individual.

205.    Even though this couple were moved to another floor, the male individual continued to stalk Ochei at the lobby and by visiting Ochei's floor.

206.    On September 12, 2009, on her way out of the building, Ochei met this male individual at the hallway in front of Room 410. Upon returning from her trip to the store, Ochei discovered that the lock to her door had been damage and the door panel broken.

207.    Despite plaintiff's report to the landlord's counsel regarding this damage, the damage has not been repaired.

208.    The landlord's action in renting the subject premises out to male and female couples, subject single female residents like the plaintiff to the danger of possible attack by allowing strange men and women to share the same public bathrooms with defective and unsafe locks at the doors.

209.    The repeated acts of harassments by the landlord and their agents, including defendant, Angela Saidana that are intended to cause plaintiff to vacate her dwelling unit or to surrender or waive her rights in relation to her occupancy of the dwelling unit is a class c immediately hazardous violation as defined by § 27-2005 (d) of the Administrative Code of the City of New York.

210.    In the above-referenced HPD action and in accordance with the Administrative Code of the City of New York, Ochei made the following request to the Court:

(i)     find that landlord, and its agents, including Angela Saidana have harassed plaintiff pursuant to 27-2005[d];

(ii)    decide that a class c violation existed at the time the harassment occurred;

(iii)   order the landlord and their agents, including Angela Saidana to stop harassing the plaintiff under 27-2005[d] and 27-2121;

(iv)    order the landlord to pay to the Department of Housing Preservation and

Development civil penalties for no less than $1,000 and not more than $5,000

for each dwelling unit in which violations are found following 27-2115(m); and

(v)     award such other further relief as this court deems just and proper.

211.    Despite the Court Order, some of the above-referenced violations still exist,

including but not limited to the defective and unsafe locks at the bathroom doors, continuing acts

of harassments, including one physical attack and one police threat.

212.    The Statutes of the State of New York impose upon the defendants, the landlord

the duty of maintaining their premises in a safe and proper habitable condition so that the premises

will not be dangerous to those who properly use them.

213.    The Statutes of the State of New York impose upon the defendants, the City of New

York, the County of New York, and the State of New York, the New York Police Department, and

the Landlord, the duty to properly train and supervise their officers, employees, and/or agents.

214.    The Statutes of the State of New York impose upon the defendants, the City of New

York, the County of New York, the State of New York, the New York Police Department, and the

Landlord, the duty to properly train, control, restrain, and/or supervise the police officers, tenants,

agents, and those under their care, control, and/or power through proper supervision and discipline

to prevent them from inflicting physical injury and emotional distress on the tenants.

215.    The Statutes of the State of New York impose upon the defendant, Erin Choi, the

duty to "do justice" as the representative of the People of State of New York, not an ordinary party

to a controversy, but of a sovereignty whose obligations to govern at impartiality is as compelling as

its obligation to govern at all, as such he is a servant of the Law whose twofold aim should be that

guilt shall not escape or innocence suffer.

216.    The Statutes of the State of New York impose upon defendants Officer Kalkau, Officer Martin, and Officers "John Doe 1" and "John Doe 2" of New York City Police Department, the fundamental duties of serving the communities, safeguarding lives and properties, and to protect the innocent against deception, the weak against oppression, intimidation and the peaceful against violence and to respect and ensure the constitutional rights of all to liberty, equality and justice.

217.    The statutes of the State of New York impose upon defendants Officer Kalkau, Officer Martin, and Officers "John Doe 1" and "John Doe 2" of New York City Police Department, the fundamental duties to perform all duties impartially without favor or affection or ill will, and without regard to status, sex, race, religion, national origin, political belief, or aspiration, and to ensure that all individuals are treated equally with courtesy, consideration, and dignity.

218.    On May, 14, 2008, the defendants, the City of New York, the County of New York, the State of New York, and the New York City Police Department, disregarding their statutory duties, negligently and recklessly permitted Officer Kalkau, Officer Martin, and Officers "John Doe 1" and "John Doe 2" and the landlord and its agent Angela Saidana to intentionally commit assault and battery against plaintiff in spite of several previous complaints made to them about these assaults and batteries being committed on plaintiff by police officers and the landlord, and their agents.

219.    On or about June 3, 2008, the defendants, the City of New York, the County of New York, the State of New York, and the New York City Police Department through their agent Erin Choi and relying on transparently fabricated Complaint of Officer Kalkau, and false deposition of Angela Saidana as a basis for arresting, detaining and confining Ochei, recklessly and maliciously prosecuted claimant despite all the exculpatory evidence present at the time when the criminal proceeding was initiated.

220.    Between May 15, 2008, and November 16, 2009, claimant appeared in front of the

41

judges eight times while the prosecution repeatedly informed the Court that "The People Are Not Ready", before the charges against her was finally dismissed after the prosecution unilaterally moved the Court to dismiss for lack of sufficient evidence to prove the charge against her.

221. From the date of her arraignment on May 15, 2008, to December 2008, plaintiff repeatedly requested information regarding her case, including, but not limited to permission to review and copy her file from her court appointed attorney, but she was completely denied access to information about her case.

222. Throughout plaintiff's appearances in front of the judges in 2008, her court appointed counsel failed to appear in front of the judges with her or counsel her prior to any of her court appearance.

223. After several unsuccessful attempts to obtain information regarding her case, plaintiff decided to conduct a research on how to proceed as *pro se* criminal defendant.  In September 2008, she was informed for the first time by the *pro se* office at the Supreme Court, 60 Central Street, Room 116, New York, NY, that she was supposed to file a personal injury claim and was instructed on how to proceed with the filing process.

224. On September 11, 2008, plaintiff filed her notice of claim with The New York Office of the Comptroller.  On the date that she filed her claim, plaintiff included her postal mailing address in her application, but she was advised to delete it from her application and to return to the Office of the Comptroller and request a change of address after receipt of her Claim Number.  Upon receipt of her Claim Number: 2008PI021837, plaintiff promptly returned to the Office of the Comptroller and requested a change of address to her post office box.

225. Plaintiff did not receive any correspondent from the Office of the Comptroller.  After leaving several unreturned telephone messages, claimant decided to return to the Office of the

Comptroller to file another personal injury claim and to amend her claim to include violation of her constitutional rights and for malicious prosecution, but she was advised that her original Claim Number was still valid as she could file her claim with the same Claim Number.

FIRST CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983 & NEW YORK STATE LAW
FALSE ARREST AND IMPRISONMENT

226.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 225 as if separately set forth herein.

227.    At all times relevant herein, the conduct of all defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

228.    Acting under color of law, defendants worked a denial of Ochei's rights, privileges or immunities secured by the United States Constitution or by Federal law,

(a)    by depriving Ochei of her liberty without due process of law, by taking her into custody and holding her there against her will,

(b)    by making an unreasonable search and seizure of her property without due process of law,

(c)    by conspiring for the purpose of impeding and hindering the due course of justice with intent to deny Ochei equal protection of laws,

(d)    by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of her rights, privileges, and immunities as guaranteed by the Fourth, Fifth, Fourteenth Amendments to the Constitution of the United States.

229.    The individual defendants, Officer Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe" are New York City Police Officers, who were, at all times relevant herein acting within the course and scope of their employment and under color of state law on May 14,

2008, at approximately 8:30 a.m. to 4:00 p.m.

230.    On or about May 14, 2008 at approximately 8:30 a.m. plaintiff called 911 on account of injury she sustained from being pushed to the ground by her landlord's agent Ms. Saidana when Officer Kalkau who arrived at the scene fabricated evidence, seized her personal belongings, arrested her, handcuffed her hands to her back and place her in custody of "John Doe 2" inside the police patrol car as Officer Kalkau returned to plaintiff's room, and plaintiff was transported to the 18 precinct after Officer Kalkau returned to the patrol car after visiting plaintiff's room.

231.    Upon arrival at the 18 precinct, still handcuffed to her back, plaintiff was searched at the public area of 18 precinct by Officer Martin before being detained in a holding cell by order of Supervisor "John Doe", and later, she was transported with handcuffed hands to her back, by police patrol car to 100 Center Street, thus she remained in custody without food or drink for approximately thirty (30) hours, and additional six (6) hours at the hospital without food or drink.

232.    Defendant Officer Kalkau denied Ochei immediate medical care by ordering the EMS personnel who responded to plaintiff's 911call not to attend to plaintiff and to leave the area where plaintiff was waiting for medical intervention.

233.    Defendant Officer Kalkau told Ochei that she was being arrested on assault charge even though both Ochei and other eyewitnesses at the scene informed Officer Kalkau that Ochei was the victim.

234.    Next Officer Kalkau seized Ochei's personal belongings, handcuffed her, and put her into the patrol car under the guard of partner, "John Doe 2" where Officer Kalkau informed "John Doe 2" that he, Officer Kalkau was returning Ochei's personal belongings back to Ochei's room.

235.    At no time, either inside the social service office or at any later time and place did Ochei attempt to resist arrest or offer violence to the police officers.

236.    Defendants intended to restrict plaintiff's movement. Plaintiff's freedom of movement was directly restricted by the acts of the defendants by illegally denying her medical care, handcuffing her hands to her back, and to a bench and detaining plaintiff without reasonable suspicion or probable cause.

237.    At all times relevant herein, plaintiff was aware that her freedom of movement was restricted and suffered great humiliation, injury to her reputation, emotional injuries, and damages as a result of being falsely arrested and searched, and detained for assault

238.    Defendant Officer Kalkau swore out and signed the Complaint against plaintiff alleging as follows:

> On May 14, 2008, at about 08:10 hours at 317 West 45th Street in the County and State of New York, the Defendant committed the offense of
>
> 1.  PL120.00(1)  Assault in the Third Degree (1 count)
>
> The defendant with intent to cause physical injury to another person, caused such injury to another person.
>
> The offenses were committed under the following circumstances:
>
> Deponent states that deponent is informed by Angela Saidana, of an address known to the District Attorney's Office, the informant observed  the defendant repeatedly strike informant about informant's body, to wit, informant's arms, face and chest, with defendant's open fist, causing informant to suffer lacerations to informant's chest and left arm, swelling and redness to informant's left eye, and causing informant to suffer substantial pain. (Exhibit E).

239.    There was no warrant for the arrest, body search, and detention of plaintiff on May 14, 2008 by Officer Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe". The arrest, search and detention of plaintiff was without reasonable grounds for said defendants to believe Ochei had committed an offense and defendants knew they were without probable cause to arrest, search and detain Ochei.

240.    By arresting plaintiff under color of state law without probable cause, defendants

Officer Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe" violated the Fourth

Amendment of the United States Constitution's prohibition against unreasonable searches and

seizures, made applicable to the states under the Fourteenth Amendment which the Congress has

provided a remedy under 42 U.S.C. § 1983.

241.    The defendants violated claimants right under the common law of New York by

arresting her without probable cause to believe that she had committed a crime.

242.    As a result of the concerted unlawful and malicious arrest by defendants, Officer

Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe", Ochei was deprived of

both her liberty without due process of law, and her right to equal protection of the laws, and the

course of justice was impeded, in violation of the Fifth, Sixth and Fourteenth Amendments of the

Constitution of the United States and 42 U.S.C. § 1983 and the common law of New York.

243.    Defendants have caused damages to plaintiff by their false arrest and detention of

plaintiff. And plaintiff is entitled to recover against the defendants for injuries, damages, losses

proximately caused by the false arrest as set forth in this Complaint.

244.    For the false arrest, defendants are all therefore jointly and severally liable for actual,

general, special, compensatory damages, and for punitive damages in amounts appropriate to the

proof at trial.

SECOND CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983 & NEW YORK STATE LAW:
DETENTION AND CONFINEMENT

245.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 244 as if separately set forth herein.

246.    At all times relevant herein, (a) the defendants acted with the intention of confining

Ochei within fixed boundaries, (b) the act directly resulted in confinement, and (c) Ochei was

conscious of the confinement

247.    Defendants Officer Kalkau, Partner "John Doe", and Supervisor "John Doe" imposed by force or threats an unlawful restraint upon Ochei's freedom of movement by seizing her belongings, arresting her and handcuffing her hands behind her back, transporting her first to the 18 precinct where she was detained for approximately 4-6 hours before being transported to police headquarter at 1 Police Plaza in lower Manhattan where she was detained with a group of about 20 individuals for additional 20-25 hours.

248.    As a result of their concerted unlawful and malicious detention and confinement of Ochei, defendants Officer Kalkau, Partner "John Doe", and Supervisor "John Doe," deprived Ochei of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment of the Constitution of the United States, 42 U.S.C. § 1983 and the New York State.

249.    Defendants' conduct in detaining and confining plaintiff which resulted in the deprivation of plaintiff's constitutionally-protected right of liberty was intentional, extreme and outrageous, and thereby entitles plaintiff to an award of punitive damages.

250.    Defendant, under the color of state law, Officer Martin, after introducing plaintiff to Officer Supervisor "John Doe", specifically stating, "here is your subject" caused an unlawful search of plaintiff's body at a public area of the precinct and unlawful imprisonment of plaintiff.

251.    For the false detention and confinement, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

252.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, the State, County, and City of New York are liable under the doctrine of *respondeat superior*.

## THIRD CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
## UNREASONABLE SEARCH AND SEIZURE

253.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 252 as if separately set forth herein.

254.    As a result of their concerted unlawful and malicious arrest, detention, and confinement, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," caused Ochei to be subjected at the public area of the 18 precinct lobby, and at the 100 Center Street detainees' holding area to body search by unzipping plaintiff's pants, pulling her clothes and patting different parts of her body, including her breast, in a situation where there was no reason to believe that weapons or contraband had been concealed on or in her body, and thus deprived Ochei of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

255.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

256.    Defendants have caused the injuries, damages, and losses to plaintiff by their outrageous conduct; plaintiff is entitled to recover against the defendants for injuries and damages.

257.    For the body search, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE ARTICLE I § 12
## UNREASONABLE SEARCH AND SEIZURR AND INTERCEPTIONS

258.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 257 as if separately set forth herein.

259.    Section 12 provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

260.    Defendants worked a denial of Ochei's rights, privileges or immunities secured by Article 1 of the New York State Constitution.

    (a)  by depriving Ochei of her liberty without due process of law, by taking her into custody and holding her there against her will,

    (b)  by making an unreasonable search and seizure of her property without due process of law,

    (c)  by conspiring for the purpose of impeding and hindering the due course of justice with intent to deny Ochei equal protection of laws,

    (d)  by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of her rights, privileges, and immunities as guaranteed by the Statute.

261.    The individual defendants, Officer Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe" are New York City Police Officers, who were, at all times relevant herein acting within the course and scope of their employment on May 14, 2008, at approximately 8:30 a.m. to 4:00 p.m.

262.    At no time, either inside the social service office or at any later time and place did Ochei attempt to resist arrest or offer violence to the police officers.

263.    Defendants intended to restrict plaintiff's movement.  Plaintiff's freedom of movement was directly restricted by the acts of the defendants by illegally denying her medical

care, handcuffing her hand to her back, and to a bench and detaining plaintiff without reasonable

suspicion or probable cause.

264.    As a result of their concerted unlawful and malicious arrest, detention, and

confinement, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," caused

Ochei to be subjected at the public area of the 18 precinct lobby, and at the 100 Center Street

detainees' holding area to unreasonable body search by unzipping claimant's pants, pulling her

clothes and patting different parts of her body, including her breast, in a situation where there was

no reason to believe that weapons or contraband had been concealed on or in her body, and thus

deprived Ochei of both her right to liberty without due process of law and her right to equal

protection of the laws, and the due course of justice was impeded.

265.    Defendants violated the plaintiff's right under Article 1, Sections 11 and 12 of the

New York State Constitution and Article 2, §§ 2, 8, and 12 of the New York Civil Rights, Bill of

Rights.

## FIFTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983 & NEW YORK STATE LAW:
## PRIVACY

266.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 265 as if separately set forth herein.

267.    At a minimum, and pursuant to the Fourth Amendment of the United States

Constitution, and to the Article 1, Section 12 of the New York State Constitution, plaintiff had a

reasonable expectation of privacy with respect to indecent exposure of her body at a public area by

Officer Martin, and the unauthorized entry into plaintiff's room by Officer Kalkau when plaintiff

was in handcuff under the custody of Partner "John Doe", inside police patrol car.

268.    In as much as Officer Kalkau was in possession of the keys to plaintiff's room, and

had free access to plaintiff's room, it is believed and therefore averred that Officer Kalkau had the

ability to search and remove any item from plaintiff's room or place any item therein without her permission and authorization, all of which is embarrassing and humiliating.

269.    As the search of plaintiff's body and entry into her room was sudden and unexpected, it is believed and therefore averred that Officer Kalkau and Officer Martin may have put Ochei in a compromising or embarrassing positions, including but not limited to inappropriate placement of items on her body and in her room.

270.    The fact of plaintiff's arrest and prosecution became known to persons unknown to plaintiff as a result of the arrest and prosecution being made part of the public records of the State, County, and City of New York and appearing on Court documents to public scrutiny.

271.    Defendants' conduct in invading plaintiff's privacy which resulted in the deprivation of plaintiff's constitutionally-protected right of liberty was intentional, extreme and outrageous, and thereby entitles plaintiff to an award of punitive damages.

272.    For the violation of plaintiff's privacy, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

SIXTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983 & NEW YORK STATE LAW:
REFUSING OR NEGLECTING TO PREVENT

273.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 272 as if separately set forth herein.

274.    At all times relevant to this Amended Complaint, defendants Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," and NYPD were acting under the direction and control of defendants Raymond W. Kelly and the City, County and State of New York.  Defendants Erin Choi was acting under the direction and control of Robert M. Morgenthau and the County and

State of New York. Defendant Hon. J. Burke was acting as a final decision maker and under the direction and control of State, County and City of New York. Defendant, Angela Saidana was acting under the direction and control of the landlord and owner, Alan Lapes

275.    Acting under color of law and pursuant to official policy or custom, defendants Raymond W. Kelly, Robert M. Morgenthau and State, County and City of New York knowingly and recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants police officers and assistant district attorneys in their duties to refrain from:

(a)    unlawfully and maliciously harassing a person who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(b)    unlawfully and maliciously arresting, imprisoning and prosecuting a person who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(c)    conspiring to violate the rights, privileges, and immunities guaranteed to plaintiff by the constitution and laws of the United States and the State of New York,

(d)    otherwise depriving plaintiff of her constitutional and statutory rights, privileges, and immunities.

276.    Defendants the landlord, Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and the State, County and City of New York had knowledge or, had they diligently exercised those duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done as heretofore alleged, were about to be committed. The landlord, Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and the State, County and City of New York had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly,

or with gross negligence failed or refused to do so.

277.    Defendants Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and the State, County and City of New York directly or indirectly, under color of law, approved or ratified the unlawful deliberate malicious reckless, and wanton conduct of defendants police officers, and assistant district attorneys.  The landlord and Alan Lapes approved or ratified the unlawful malicious reckless, and wanton conduct of its agents, officers, and employees, including, Angela Saidana.

278.    As a direct and proximate cause of the neglect and intentional acts of defendants, the landlord, Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and the State, County and City of New York as set forth in paragraphs 274 to 277 above, plaintiff suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States, protected by 42 U.S.C. §1983 and the New York State Constitution.

279.    For refusing or neglecting to prevent, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

SEVENTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983 & NEW YORK STATE LAW:
CONSPIRACY

280.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 279 as if separately set forth herein.

281.    All the defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused

Ochei damages that were a direct result of those acts.

282.    In furtherance of their object, defendants did two or more overt acts against the plaintiff.  Those unlawful overt acts include, but are not limited to the following:

(a)    Defendants Hon. J. Burke strategically maneuvered the coercion of claimant by transferring Ochei's case to a new counsel and denying her request to proceed *pro se* in order to prevent her from confronting her accusers, and to further delay prosecution.

(b)    Defendants Erin Choi strategically maneuvered the coercion of claimant by repeatedly informing the Court that "The People Are Not Ready" and requesting seven adjournments of trial.

(c)    Defendant, Erin Choi knowingly, intentionally and with reckless disregard for the truth, presented a false Complaint by Officer Kalkau, and false statement by Angela Saidana as part of the People's Supporting Deposition

(d)    Defendants, Hon. J. Burke, and Erin Choi knew or should have known that both Officer Kalkau's Complaint and Angela Saidana's statement were mere fabrication[4].

(e)    Defendant, Angela Saidana misrepresented that Ochei attacked her.

(f)    Defendant, Officer Kalkau, fabricated evidence against Ochei in his Complaint.

(g)    Defendant, Officer Kalkau and Partner "John Doe 2"did not observe any injury, tear, or laceration on Angela Saidana's body as they claimed in Officer Kalkau's Complaint.

(h)    Defendants Officer Kalkau, Partner "John Doe" Officer Martin, and Officer Supervisor "John Doe" knew that the events leading to Ochei's arrest was a

---

[4]   Defendants, Hon. J. Burke, and Erin Choi knew or should have known because a review of the surveillance tape monitoring the lobby prior to plaintiff's arrest would have revealed facts to validate Ochei's claim that she was the victim, not the perpetrator at the time of her arrest

Landlord/Tenant dispute.

(i)    In concert with Angela Saidana's misrepresentation and Officer Kalkau's fabrication, claimant was arrested, detained, confined and wrongfully prosecuted for a period of 18 months on a charge of third degree assault.

283.    Defendants the landlord, Angela Saidana, Brendan Kalkau, Partner "John Doe", "Jane Doe" Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke had an ulterior motive, including but not limited to personal financial benefit, for arresting, detaining Ochei and charging her with crimes she had not committed.

284.    Defendants agreed that the object or course of action was to cause Ochei to vacate her dwelling unit, to surrender or wave her right in relation to her occupancy of the dwelling unit by arresting, detaining, and confining Ochei without probable course, and maliciously charge and prosecute her with crime, and to undermine her efforts in her landlord/tenant litigation.

285.    As a result of the concerted unlawful and malicious conspiracy of defendants the landlord, Angela Saidana, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, Ochei was deprived of both her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

286.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

287.    For the conspiracy, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

## EIGHTH CAUSE OF ACTION
## FEDERAL FAIRS HOUSING ACT
## VIOLATION OF 42 U.S.C. § 3601 *et seq.*

288.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 287 as if separately set forth herein.

289.    Section 804(4) of the Fair Housing Act, 42 U.S.C. § 3604(a) states in pertinent part:

> It shall be unlawful to refuse to rent after making of a *bona fide*
> offer, or to negotiate rental of, or otherwise make
> unavailable or deny, a dwelling to any person because of
> race or national origin

290.    Defendants, the landlord's conduct as set forth above constitute a refusal to rent or

the refusal to negotiate the sale of, or a denial of housing on the basis of race or color or national

origin in violation of Section 804(4) of the Fair Housing Act, 42 U.S.C. § 3604(a)

291.    Section 804(b) of the Fair Housing Act, 42 U.S.C. § 3604(b) states in pertinent part:

> It shall be unlawful to discriminate against any person in the
> terms, conditions, or privileges of rental of a dwelling, or
> in the provision of services or facilities in connection
> therewith because of race or national origin

292.    Defendants, the landlord's conduct as set forth above, including but not limited to

continuous acts of harassments and intimidations constitute discrimination against plaintiff in the

terms, conditions, or privileges of rental of a dwelling, and/or in the provision of services or

facilities in connection therewith because of race, color or national origin in violation of Section

804(4) of the Fair Housing Act, 42 U.S.C. § 3604(b)

293.    Section 805 of the Fair Housing Act, 42 U.S.C. § 3605 states in pertinent part:

> It shall be unlawful for any person… whose business includes
> engaging in residential real estate-related transactions to
> discriminate against any person in making available such
> a transaction, or in the terms or conditions of such a
> transaction,  because of race or national origin

294.    Defendants, the landlord's conduct as set forth above, including, but not limited to

refusing to accept rent payment from plaintiff since November 2004, constant interruption of essential services constitute discrimination against a person in making available residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race or national origin in violation of Section 805 of the Fair Housing Act, 42 U.S.C. § 3605

295.    Section 3617 of the Fair Housing Act, 42 U.S.C. § 3617 states in pertinent part:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed,… any right granted or protected by section 803, 804, 805 of this title

296.    The action of the landlord, and Angela Saidana in making false allegation, and defendants, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," Erin Choi, and the Hon. J. Burke's conduct as set forth above and said defendants' action by arresting, detaining and prosecuting Ochei without reasonable grounds for them to believe Ochei had committed an offense and without probable cause to do so, constitutes unlawful coercion, intimidation, threat and interference with plaintiff's right in the exercise and enjoyment of the right granted and protected by section 803, 804, 805 of the Fair Housing Act.

297.    Plaintiff is an aggrieved person as defined in 42 U.S.C. § 3602(1), has been injured by the Defendants' discriminatory conduct, and has suffered damages as a result.

298.    Defendants' conduct was intentional, willful, and made in disregard for the rights of others

299.    Accordingly, under 42 U.S.C. § 3613(c), plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

NINETH CAUSE OF ACTION
FEDERAL FAIRS HOUSING ACT
VIOLATION OF 42 U.S.C. § 1981 and § 1982

300.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 299 as if separately set forth herein.

301.    Defendants' conduct as set forth above prevented and continues to prevent Ochei from enjoying the same right to make and enforce contract as is enjoyed by white citizens under § 1981 of the Civil Rights Act of 1866 and the same right to rent real property as is enjoyed by white citizens under § 1982 of the Civil Rights Act of 1866.

302.    Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

303.    Defendants' conduct was intentional, willful, and made in disregard for the rights of others

304.    Accordingly, under 42 U.S.C. §§ 1981, 1982 and 1988, plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983:**
**CIVIL RIGHTS ACT**

305.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 304 as if separately set forth herein.

306.    Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and Laws, shall be liable to the party injured at law, suit in equity or other proper proceeding for redress....

307.    All defendants are persons within the meaning of § 1983, in that at all times material hereto, they were acting under the color of state law as a political subdivision of the State of New York, or a representative thereof.

310.    Defendants' denial of medical care to plaintiff, and defendants' arrest, body search, detention, and prosecution of plaintiff was without probable cause and in violation of her civil rights under the United States Constitution and the New York State Constitution.

311.    There was no warrant for the arrest, body search, detention on May 14, 2008, and there was no ground for the prosecution and seven adjournments of trial for eighteen (18) months between May 15, 2008, and November 16, 2009.  The arrest, body search and detention of plaintiff was without reasonable grounds for said defendants to believe Ochei had committed an offense and defendants knew they were without probable cause to arrest, search, detain and prosecute Ochei.

312.    Plaintiff was charged with the offence of assault in the third degree without probable cause, in violation of plaintiff's rights under the United States Constitution and the New York State Constitution.  The defendants had actual and constructive notice of the pervasive constitutional violations perpetrated by the defendants upon plaintiff.

313.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

314.    At all times relevant hereto, the individual defendants acted in accordance with an established policy, practice, custom, and/or procedure which violated the plaintiff's known constitutional rights.  Upon information and belief, the defendants acted in accordance with the unconstitutional policy, which authorized police officers to deny individuals medical attention, refuse to take report from witnesses who volunteered to give statement with regard to their account of the incidents prior to Ochei's arrest, and to arrest plaintiff based on mere fabrication of evidence.  Defendant Erin Choi prosecuted Ochei knowing that Officer Kalkau's sworn and signed Complaint and Ms. Saidana deposition to be false, and Hon. J. Burke deliberately delayed trial and denied Ochei an opportunity for self defense without reasonable cause.

315.    As a result of the concerted unlawful and malicious arrest, prosecution and seven

adjournments of trial by defendants Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, Ochei was deprived of liberty without due process of law, the right to confront her accusers, and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983

316.    Defendants' actions constitute a willful and knowing violation and deprivation of a right secured by the Constitution of the United States in violation of 42 U.S.C.§ 1983, specifically, the right to be free from excessive and unreasonable police action; the deprivation of liberty and possessions without due process of law; the right to be secure against unreasonable searches and seizures; the right to privacy; the right to confront her accusers; and the right to equal protection of the laws.

317.    The acts of all defendants in violation of the United States Constitutional rights of plaintiff justify an award of reasonable fees under 42 U.S.C. § 1988 and plaintiff is entitled to recover against all defendants for injuries, damages, and losses proximately caused by the conduct as set forth in this Complaint.

<u>ELEVENTH CAUSE OF ACTION</u>
<u>VIOLATION OF NEW YORK STATE ARTICLE I § 11</u>
<u>EQUAL PROTECTION OF THE LAW</u>

318.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 317 as if separately set forth herein

319.    Section 11 provides:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof.  No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

320.    Defendants' denial of medical care to plaintiff, and defendants' arrest, body search, detention, and prosecution of plaintiff was without probable cause and in violation of her civil rights under the United States Constitution and the New York State Constitution.

321.    There was no warrant for the arrest, body search, detention on May 14, 2008, and there was no ground for the prosecution and seven adjournments of trial for eighteen (18) months between May 15, 2008, and November 16, 2009. The arrest, body search and detention of plaintiff was without reasonable grounds for said defendants to believe Ochei had committed an offense and defendants knew they were without probable cause to arrest, search, detain and prosecute Ochei.

322.    Plaintiff was charged with the offence of assault in the third degree without probable cause, in violation of claimant's rights under the United States Constitution and the New York State Constitution. The defendants had actual and constructive notice of the pervasive constitutional violations perpetrated by the defendants upon plaintiff.

323.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

324.    At all times relevant hereto, the individual defendants acted in accordance with an established policy, practice, custom, and/or procedure which violated the plaintiff's known constitutional rights. Upon information and belief, the defendants acted in accordance with the unconstitutional policy, which authorized police officers to deny individuals medical attention, refused to take report from witnesses who volunteered to give statement with regard to their account of the incidents prior to Ochei's arrest, and to arrest plaintiff based on mere fabrication of evidence. Defendant Erin Choi prosecuted Ochei knowing that Officer Kalkau's sworn and signed Complaint and Ms. Saidana deposition to be false, and Hon. J. Burke deliberately delayed trial and denied Ochei an opportunity for self defense without reasonable cause.

325.    As a result of the concerted unlawful and malicious arrest, prosecution and seven

adjournments of trial by defendants Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, Ochei was deprived of liberty without due process of law, the right to confront her accusers, and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the  Article 1 §11 and Article 2 §§ 2, 10, and 12,  of New York Civil rights law and the common law of State of New York.

326.    Defendants' actions constitute a willful and knowing violation and deprivation of a right secured by the Article 1 of Constitution of the New York State and the United States in violation of 42 U.S.C.§ 1983, specifically, the right to be free from excessive and unreasonable police action; the deprivation of liberty and possessions without due process of law; the right to be secure against unreasonable searches and seizures; the right to privacy; the right to confront her accusers; and the right to equal protection of the laws.

TWELFTH CAUSE OF ACTION:
VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
NEW YORK EXECUTIVE LAW § 290 *et seq.*

327.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 326 as if separately set forth herein.

328.    At all times relevant herein the conduct of all defendants were subject to the New York States Human Rights Law.

329.    Defendants' conduct as set forth above constitute a refusal or a denial of housing accommodation, or withholding of a housing accommodation, because of race, color, or national origin in violation of article 15 of the New York Executive Law § 296(5)(1).

330.    Defendants' conduct as set forth above constitutes discrimination because of race, color or national origin in terms, conditions or privileges of the rental of housing accommodation or in the furnishing of facilities or services in connection therewith in violation of the New York

62

Executive Law § 296(5)(a)(2).

331.    Defendants' conduct as set forth above constitutes refusal to rent housing accommodation or to refuse to negotiate for the rental of housing accommodation because of plaintiff's race, color or national origin in violation of the New York Executive Law § 296(5)(c)(1), in violation of the New York Executive Law § 296(6)

332.    Defendants, the landlord, Alan Lapes, Ms. Saidana, Brendan Kalkau, Partner "John Doe", "Jane Doe" Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, interfered with and/or attempted to interfere by threats, intimidation, or coercion with plaintiff's exercise and enjoyment of her rights -- e.g. her rights to her liberty, her right to occupy her real property, specifically, her apartment/room, at 317 West 45th Street, Apt 420, New York, NY, 10036, and her right to due process secured by the state and federal constitutions or laws of the United States and/or the State of New York.

333.    Thus, under color of law, Ochei's liberty was threatened, and she was intimidated and coerced into implicitly pleading guilty and getting punished by being forced to make eight appearances in front of the judges without permission to enforce her right to confront her accusers, and to give up her possessory right.

334.    Defendants' conduct as set forth above constitute aiding, abetting inciting, compelling and/or coercing the doing of the acts forbidden by New York Executive § 296(5), in violation of the New York Executive Law § 296(6)

335.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and the State, County and City of New York are liable under the doctrine of *respondeat superior*.

336.    As a direct and proximate result of the conduct of the defendants, Ochei was intimidated and put in continuing anxiety and has suffered damages including but not limited to the aforementioned damages.

337.    Plaintiff has been injured by the defendants' discriminatory conduct and has suffered damages as a result.

338.    Defendants' conduct was intentional, willful, and made in disregard for the rights of others

339.    Accordingly, under Article 15 of the New York Executive Law § 297, plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

THIRTEENTH CAUSE OF ACTION:
VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW
NEW YORK CITY ADMINISTRATIVE CODE LAW § 8-107

340.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 339 as if separately set forth herein.

341.    At all times relevant herein the conduct of all defendants were subject to the New York City Human Rights Law.

342.    Defendants' conduct as set forth above constitute a refusal to rent, approve the rental, or otherwise deny to or a withholding of a housing accommodation or an interest therein, because of plaintiff's actual or perceived race, color, or national origin in violation of the New York Administrative Code § 8-107(5)(a)(1).

343.    Defendants' conduct as set forth above constitutes discrimination against plaintiff because of plaintiff's actual or perceived race, color or national origin in violation of the New York Administrative Code § 8-107(5)(a)(2).

344.    Defendants' conduct as set forth above constitutes discriminatory practice by real estate brokers in refusing to rent a housing accommodation or to negotiate for rental of a housing accommodation because of plaintiff's actual or perceived race, color or national origin in

violation of the New York Administrative Code § 8-107(5)(c)(1),

345.    Defendants' conduct as set forth above constitute aiding, abetting inciting, compelling or coercing the doing of the acts forbidden by New York Administrative Code § 8-107(5), and/or an attempt to do so, in violation of the New York Administrative Code § 8-107(6)

346.    Within ten (10) days of filing this amended complaint, plaintiff will serve a copy of the amended complaint on the City Commission on Human Rights and the Corporate Counsel, pursuant to New York City Administrative Code § 8-502(c)

347.    Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

348.    Defendants' conduct was intentional, willful, and made in disregard for the rights of others

349.    Accordingly, under New York City Administrative Code §§ 8-502(a) and 8-502(f), plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

<u>FOURTEENTH CAUSE OF ACTION</u>
<u>DEFAMATION</u>

350.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 349 as if separately set forth herein.

351.    Defendants' false and reckless sworn and signed complaint and deposition filed with the People's Certificate of Readiness in which Ochei's character was presented as a vicious attacker constitute a false factual allegation of violence, and impugned Ochei's good name as an individual, a professional with two Bachelor's degrees, a license to practice nursing, and a student aspiring to advance her scholastic endeavors and her career.

352.    Defendants' Erin Choi, Ms. Saidana, and Officer Kalkau's false and reckless

allegations as set forth in the complaint would tend to incriminate Ochei as a vicious attacker to her enormous detriment.

353.    Defendants acted intentionally, and with malice and/or reckless indifference to plaintiff's protected rights.

354.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and State, County, and City of New York are liable under the doctrine of *respondeat superior*.

355.    For the defamation of plaintiff, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

FIFTEENTH CAUSE OF ACTION
MALICIOUS PROSECUTION

356.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 355 as if separately set forth herein.

357.    Defendants instituted criminal process against plaintiff with malice:

(a)    Defendants, landlord and Ms. Saidana played an active part in the initiation of the criminal proceedings by inciting and instigating police officer, and by making false allegations.

(b)    Defendant, the NYPD played an indirect role by failing to adequately train and advise police officers, including Officer Kalkau and Partner "John Doe" on how to make an arrest or process a person under arrest thereby undermining the Officers in the performance of law enforcement duties and presenting a threat of imminent physical harm to plaintiff.

(c)    Defendant, the NYPD played an indirect role by failing to properly investigate numerous complaints filed against police officers, including Ochei's complaint

against Officer Martin on February 29, 2008 (Complaint No: 08-08077), thus subjecting plaintiff to retaliatory action and presenting a threat of imminent physical and emotional harm to plaintiff.

(d)   Defendant, Officer Kalkau played an active part in the initiation of the criminal proceedings by making a premeditated arrest of plaintiff after identifying her from her ID and then proceeded to file a false complaint against Ochei

(e)   Defendant, Partner "John Doe" played an active part in the initiation of the criminal proceedings by refusing to intervene to prevent the unlawful act of his partner Officer Kalkau and in participating in the detention and confinement of plaintiff inside the police patrol car and during transporting of plaintiff in handcuff to the 18 precinct.

(f)   Defendant, Officer Martin played an active part in the initiation of the criminal proceedings by threatening Ochei with arrest and by introducing Ochei to Officer Supervisor "John Doe" and other police officers at the precinct by stating "here is your subject" upon Ochei's arrival in handcuff at the precinct.

(g)   Defendant, Supervisor "John Doe" played an active part in the initiation of criminal proceedings by ordering that plaintiff be detained, photographed, fingerprinted at 18 precinct, and to transport plaintiff to 100 Center Street for further processing, detention and confinement.

(h)   Defendant, Erin Choi played an active part in the malicious prosecution of Ochei by knowingly and recklessly filing false complaint by Officer Kalkau, and false statement by Ms. Saidana in the supporting deposition with the People's Certificate of Readiness, and repeatedly informing the Court that "The People Are Not Ready", thus forcing Ochei to appear in front of the judges eight times and to make an oral motion for a grand jury investigation before the charges against her was finally dismissed.

(i)    Defendant, Hon. J. Burke, played an active part in the malicious prosecution of
Ochei by denying her the opportunity to confront her accusers, and by directly or
indirectly permitting Ochei's case to be assigned to a new defense counsel without
counseling Ochei, and by denying or ignoring Ochei's oral motion to proceed *pro se*
and for a grand jury investigation of the matter relating to her arrest and prosecution.

(j)    Defendant, Hon. Burke, played an active part in the malicious prosecution of Ochei
by repeatedly granting the ADAs' repeated request for adjournment of trial.

358.    The charge against Ochei was not based upon probable cause that is the state of
facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to
believe, or entertain an honest or strong suspicion that Ochei was guilty.

(a)    Defendants, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor
"John Doe," and Erin Choi had a duty to ascertain whether there was reasonable
and probable cause for an arrest and prosecution, knowing that there was a
companion with Ms. Saidana and a security guard on duty at the time of the
events leading to Ochei arrest. Defendants Officer Kalkau had a duty to question
Ochei and other witnesses including the security guard on duty prior to Ochei's
arrest. Defendant, Erin Choi had a duty to ascertain whether the statement
submitted by the "informant", Ms. Saidana was true by viewing the surveillance
video of the lobby at the time prior to Ochei's arrest. Hon. J. Burke had a duty to
ascertain whether Ochei was getting a fair and impartial justice.

(b)    Defendants, Officer Kalkau, Partner "John Doe", Officer Martin, Supervisor
"John Doe," Erin Choi and Hon. J. Burke breached that duty.

(c)    Defendant Erin Choi had information that there was a surveillance camera

monitoring the lobby and a security guard on duty at the time of the events

leading to Ochei's arrest, he had a duty to ascertain the validity of Ms, Saidana's

statement by viewing the surveillance video and failed that duty.

(d)    Defendant Erin Choi had a duty and professional obligation of fairness and to

conduct proper and reasonable investigation before prosecuting a person, and

breached that duty.

(e)    Defendant, Ms. Saidana conspired with Officer Kalkau to recklessly formulate a

false complaint based on mere fabrication of facts.  Both Ms. Saidana and Officer

Kalkau falsely stated that plaintiff attacked by " repeatedly striking Ms.

Saidana's body, arms, face and chest, with plaintiff's open fist, causing Ms.

Saidana to suffer lacerations to her chest and left arm, swelling and redness to her

left eye, and causing her to suffer substantial pain".

(f)    Defendants, Ms. Saidana incited and instigated and participated in the prosecution

by pressing to arrest and apply for a complaint for an improper purpose[3] – to gain

advantage in the eviction proceeding against plaintiff.

(g)    Defendants, the landlord instigated or participated in the prosecution by encouraging.

its agents, employees, and managers to incite the police against plaintiff

(h)    Defendant the Hon. J. Burke had a duty to ensure a fair and impartial justice.

Defendant the Hon. J. Burke breached that duty by denying Ochei the opportunity

to confront her accusers, and permitting repeated adjournments of trial, and by

---

[3]  Officer Kalkan terminated his questioning of Ochei immediately after obtaining Ochei's ID and proceeded to inform plaintiff that he was arresting her without any idea of what he was basing plaintiff arrest on which simply means that the arrest was premeditated.  When asked by plaintiff to state what he was charging Ochei with Officer Kalkau evidently displayed a lack of knowledge of what the charge was by refusing to answer plaintiff's question until after stepping outside and then returned to inform Ochei that he was charging her with assault.

deliberately delaying action on the case by assigning the case to a new public

defender counsel without reasonable cause and without counseling Ochei, and by

denying or ignoring Ochei's motion to proceed *pro se*.

359.    The charge against Ochei was dismissed six months and two additional court

appearances after Ochei contemporaneously, requested a grand jury investigation of the matter

relating to her arrest and prosecution while requesting the Court's permission to proceed *pro se*.

360.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau,

and the State, County and City of New York are liable under the doctrine of *respondeat superior*.

361.    For the malicious prosecution, defendants are all therefore liable for injunctive

relief, and for actual, special, compensatory damages, in an amount deemed at time of trial to be

just, fair, and appropriate to the proof.

## SIXTEENTH CAUSE OF ACTION
## MALICIOUS ABUSE OF PROCESS

362.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 361 as if separately set forth herein.

363.    Defendants maliciously used a "legal process 'to accomplish some ulterior purpose

for which it was not designed or intended, or which was not the legitimate purpose of the particular

process employed'"

364.    After Ochei's counsel repeatedly failed to appear in front of the judges with her,

and other unresolved issues in 2008, in December 2008, Ochei requested her counsel's help in

reviewing and copying her file in contemplation of either seeking a private criminal defense

counsel or proceeding *pro se*.  In the midst of discussion to resolve these issues, Ochei's counsel

unceremoniously informed her that her case had been assigned to a new public defender counsel.

365.    Based on the information obtained from the new investigator assigned to investigate

Ochei's case, it appeared as though he had viewed the surveillance tape of the event prior to Ochei's arrest on May, 14, 2008.

366.    As noted in paragraph 173, plaintiff had expressed her objection to the late hour investigation of her case. Despite the conclusion of investigation of Ochei's case in or about March 2009, on May, 19, 2009, Ochei's case was adjourned to September 10, 2009, by the Hon. J. Burke.

367.    The Criminal Court Judge knew that assigning plaintiff's case to a new counsel in December 2008 was groundless and made no attempt to counsel Ochei's regarding this change.

368.    Defendant, the Hon. J. Burke knew or should have known that adjourning Ochei's case to September 10, 2009, was groundless and he sought to use the process for an ulterior purpose, including but not limited to the purpose of implicitly coercing plaintiff to accept ADA plea bargain offer and deliberately delaying the prosecution until eighteen (18) months statute of limitation for coercive action expired.

369.    Defendants, Officer Kalkau, Partner "John Doe", Officer Martin, and Supervisor "John Doe," Erin, Choi used the legal process with the ulterior purpose of personal financial benefit, and for retaliation against Ochei for having filed several complaints against police officers from the precinct, including Officer Martin.

370.    Defendants the landlord, Mr. Lapes, and its agents, and employees, including Ms. Saidana used Ochei's arrest and prosecution to gain advantage in their eviction litigation action.

371.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and the State, County and City of New York are liable under the doctrine of *respondeat superior*.

372.    For the malicious abuse of process, defendants are all therefore liable for injunctive relief, and for actual, special, compensatory and punitive damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.