two eyewitnesses, and without completing the interview with Ochei. Officer Kalkau stopped

questioning Ochei immediately after obtaining Ochei's ID from her. Officer Kalkau also did

not inform Ochei why he was arresting her until the plaintiff and the two eyewitnesses asked the

officer.

73.    Defendant, Officer Kalkau made the decision to arrest Ochei without obtaining

any substantial information that would warrant an arrest and immediately after Ochei disclosed

her ID to him which means that Ochei's arrest was premeditated.

**B.    Events Between 8:30 AM On May 14, 2008 And Late Afternoon
On May 15 2008**

74.    Upon Ochei's arrival in handcuff at the 18 Precinct, Ochei met Officer Martin

standing near the entrance to the precinct as though awaiting Ochei's arrival.

75.    Inside the visitors' public area where Ochei was ordered to stand close to the wall,

with her back toward the wall, Officer Martin came and stood in front of Ochei with her back

turned toward the police counter where Supervisor "John Doe" was sitting with other police

officers. Officer Martin then turned her head and one hand toward these officers and introduced

Ochei to these police officers by stating "here is your subject".

76.    Shortly thereafter, Officer Martin put on a pair of gloves and began performing

body search of Ochei by unzipping Ochei's pants, placing her hand inside Ochei's clothes, and

patting different areas of her body, including but not limited to her breast at the visitor's public

area of the precinct as Supervisor "John Doe", and other police officers and visitors watched.

77.    Ochei was placed inside a cell near the precinct lobby. After a certain interval,

Ochei was interviewed by a civilian personnel who took information relating to Ochei's profile,

including but not limited to her highest level of education, employment history and home

address.

78.    Shortly thereafter, Ochei was interviewed by Supervisor "John Doe". During the course of this interview, Ochei was informed that she would be photographed and fingerprinted by Officer Kalkau in preparation for her appearance in front of a judge at the 54th Street Courtroom.

79.    During the course of the fingerprinting which lasted approximately 30-60 minutes, a male individual was placed inside Ochei's cell and she was informed again by Officer Kalkau that she was being fingerprinted in preparation for her appearance in front of a judge at the 54th Street Courtroom.

80.    After the fingerprinting process, Ochei was handcuffed to a bench opposite the cell where this male individual was placed.

81.    From time to time, this male individual repeatedly made all kinds of gestures in order to attract Ochei's attention, including but not limited to asking her questions, screaming out loud without any provocation, and making profane and derogatory remarks.

82.    After an additional 2-3 hours on this handcuffed sitting position, Officer Kalkau, removed Ochei to another cell upstairs where Ochei was interviewed for the third time by another civilian personnel who requested that Ochei sign a piece of paper that was handed to her.

83.    Ochei informed her interviewer that she was unable to read the information on the piece of paper and declined to sign the paper as requested.

84.    Thereupon, Officer Kalkau returned to Ochei's cell and informed Ochei that she was being taken to Police Headquarter,1 Police Plaza, downtown lower Manhattan, and then proceeded to handcuff and escort Ochei to a waiting patrol car.

85.    While being transported in handcuff to the police headquarter, Ochei informed the officers inside the patrol car that she was having a severe headache. Ochei was informed that she

would receive medical attention at the police headquarter.

86.   Ochei stood in handcuff for approximately one to two hours while awaiting processing at the police headquarter before receiving medical attention by being offered two tablets of Tylenol 650 mg. which was dispensed in a manner that Ochei viewed as inappropriate.

87.   Ochei refused to take the medication for three different reasons: First, Ochei felt that the tablets were contaminated, second 24 hours had passed since Ochei had her last meal before being offered this medication, and thirdly due to fear of excessive bleeding without immediate intervention.

88.   At the police headquarter, Ochei was subjected to another processing whereby she was photographed and fingerprinted again.  Ochei was also subjected to another body search at this police headquarter.

89.   Following this events at the police headquarter, Ochei was held and detained further by being placed in a holding cell with a group of about 20 detainees where she remained without any food or drink until around 8:00 am on May 15, 2008.

90.   From the holding cell, Ochei was moved to another holding cell where she remained for another 2-3 hours before appearing in front of the Judge.

91.   After, appearing in front of the Judge, on her way home from the Courthouse, Ochei started to experience symptoms of dizziness and was losing control of her balance.  Ochei decided to return to the courthouse and requested emergency medical service.

92.   With the help of officials at the courthouse, Ochei was transported to a nearby hospital where she received medical care until her discharge in late afternoon on May 15, 2008.

93.   Ochei remained without food or drink for approximately forty eight (48) hours between late afternoon on May 13, 2008, and late afternoon on May 15, 2008.

**C.    The Defendants' Action In Prosecuting Ochei Was Based On Malice**

94.    Defendant, Erin Choi, an Assistant District Attorney, Phone: 212-335-4287, acting within the scope of his employment for defendant, NYC, along with Angela Saidana, Officer Kalkau, and other law enforcement officers acting in concert, arrested plaintiff without probable cause and then proceeded to instituted and continued the Criminal Proceedings against Ochei with defamatory purpose.

95.    Following Ochei's arraignment on May 15, 2008, defendant Choi instituted crimina proceedings against Ochei by filing the People's Certificate of Readiness with the Complaint sworn and signed by Officer Kalkau and a supporting deposition by Angela Saidana on or about June 3, 2008.

96.    The criminal proceeding terminated in favor of Ochei on November 16, 2009

97.    On May 19, 2009, Ochei orally moved to proceed *pro se* and for a grand jury investigation of the matter relating to her arrest and prosecution.

98.    Following seven adjournments of trial at the prosecution's request, and the expiration of the time for a speedy trial, on November 16, 2009, the prosecution unilaterally moved to dismiss the charge against Ochei for lack of sufficient evidence to prove the charge against her.  The Court allowed the prosecution's motion, thereby terminating the criminal proceeding and dismissing the charge against Ochei.

99.    ***Defendant Erin Choi Had No Probable Cause Either To Initiate Or Continue The Criminal Prosecution Proceeding Against Ochei***

Probable cause to initiate or continue a criminal proceeding is a state of facts in the mind of the accuser "as would lead a man of ordinary caution and prudence to believe or entertain a strong suspicion that the plaintiff committed a crime." *Carroll v. Gillespie*. 14 Mass. App. Ct. 12. 19 (1982); *Conway v. Smerling*. 37 Mass. App. Ct. 1 (1994). That state of mind must be based on reasonable investigation and on reliable evidence.  Lack of probable cause may be established by

evidence that the investigation was so flawed or superficial that it provided no reasonable basis for thinking the accused could be found guilty beyond a reasonable doubt.

(a)   <u>When Erin Choi Initiated the Criminal Proceeding On Or About June 3, 2008, Erin Choi Had No Probable Cause to Do So</u>

100.   Judged by the above-referenced standards, Erin Choi had absolutely no probable cause to initiate criminal prosecution proceeding against Ochei.

101.   At the time Erin Choi had only a sworn and signed Complaint by Officer Kalkau and a supporting deposition of Angela Saidana.

102.   The criminal proceeding was instituted by Officer Kalkau without probable cause, as the facts observed by him prior to arresting Ochei, and the matters known to him at the time he instituted the criminal proceeding, would not have warranted a reasonable police officer to believe any criminal offense had been committed by plaintiff.

103.   At Ochei's request, and on information and belief, Ms. Laura Stasior, Ochei's counsel from The Legal Aid Society served a *SUBPOENA DUSES TECUM*, DKT NO: 2008NY036494 *IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK TO:* Robert Mendez, 317 West 45th Street, New York, NY 10036, (212) 246-8581 requesting among other things,

> "Any and all photos and video surveillance inside the premises of 317 West 45th Street on May 14, 2008 between the hours of 7:00 a.m. and 10:00 a.m."

104.   Ms. Stasior conducted further investigation by assigning two separate investigators from The Legal Aid Society in June 2008.

105.   On June 6, 2008, an investigator named Sarah Finkelstein, from The Legal Aid Society assigned to Case Number: 98-2008, Docket Number: 2008NY036494 by Attorney Ms. Laura Stasior conducted an investigation by visiting the premise at 317 West 45th Street, New

York, NY, 10036, and interviewing different individuals, including but not limited to plaintiff,

Joan Ochei and plaintiff's accuser, Angela Saidana.

106.    On June 12, 2008, another investigator named Peter H. Chapman, from The Legal

Aid Society assigned to Case Number: 98-2008, Docket Number: 2008NY036494 by Attorney

Ms. Laura Stasior conducted another investigation by interviewing different individuals.  Ochei

was not interviewed by Mr. Chapman.

107.    Ochei incorporates the attached Exhibits A through C into this Complaint by

reference as if set forth herein.

108.    On information and belief, Erin Choi did not ask to view the surveillance tape.

109.    On information and belief, Erin Choi did not interview witnesses, including the

security guard on duty during occurrence of event relating to Ochei's arrest and prosecution.

110.    The law is clearly established that an important part of a reasonable investigation

would have entailed examination of the source material, but on information and belief, Erin Choi

never viewed the surveillance tape nor interview eyewitnesses prior to June 3, 2008, instead Erin

Choi filed the People's Certificate of Readiness, then proceeded to repeatedly inform the Court

that the "People Are Not Ready", thereby causing seven adjournments of trial before dismissal of

the charge against Ochei.

111.    The lack of report from the security guard on duty at the premise during the

incident, and Ochei's arrest without a warrant would have prompted a reasonable prudent

investigator to look into the reasons for these lack of eyewitness report and raised serious doubts

about the validity of the Complaint.  These numerous omissions reasonably support the inference

that the Complaint was falsified.

112.    On information and belief, on June 3, 2008, Erin Choi had conducted no

investigation sufficient to establish a state of facts in his mind that would lead a man of ordinary caution and prudence to believe or entertain a strong suspicion that Ochei viciously attacked Angela Saidana as described in Officer Kalkau's Complaint.

113.    In short, Erin Choi had no probable cause to initiate criminal proceeding on June 3, 2008.

(b)    <u>Defendant Erin Choi Had No Probable Cause to Continue the Criminal Proceeding After June, 2008</u>

114.    Ochei was arrested without a warrant by Officer Kalkau on May 14, 2008.

115.    On June 6 and 12, 2008, the two investigators from The Legal Aid Society recorded information which eliminated any semblance of probable cause to continue the criminal proceedings (Exhibits B and C).

116.    On information and belief defendant, Erin Choi failed to conduct a reasonable investigation of the facts relating to Ochei's arrest.  If Erin Choi had conducted a reasonable investigation of the facts developed during the interview of eyewitnesses, and reviewed the surveillance tape, he would have discovered all of the above described exculpatory information. That information alone would have convinced a man of ordinary caution and prudence that there was no probable cause to continue the criminal proceedings because there was no reasonable basis for believing that Ochei was capable of such vicious attack as described by Officer Kalkau in his Complaint.

117.    Defendant, Erin Choi decided to conceal all of this exculpatory evidence from the judges to whom he repeatedly informed that the "People Are Not Ready" and requested seven adjournments of trial over a period of eighteen (18) months.

**D.**     **The City of New York Acting Through Its Agent, Erin Choi Acted With Malice**

118.     As plaintiff has emphasized above, malice may be inferred from lack of probable cause.

119.     On information and belief, defendant, Erin Choi has no probable cause to initiate or to continue criminal proceedings against Ochei.  On the contrary, his investigation was so cursory, superficial and flawed that it provided no reasonable basis in June 2008, or thereafter for believing that plaintiff was guilty beyond a reasonable doubt of committing assault.

120.     Other factors also indicated that defendant Erin Choi prosecuted Ochei with improper motive.

121.     Defendant, Erin Choi prosecuted the case in such a way as to input guilt for the charge against Ochei in the mind of a reasonable person.

122.     When filing the accusatory complaint against Ochei, aimed as it was at the final decision-makers, defendant, Erin Choi knew and relied on the fact that plaintiff was in the midst of litigation with her landlord and her employer.

123.     Plaintiff's employer "coincidentally" fired Ochei on the eve of several petitions pursuant to eviction proceedings against Ochei by her landlord.

124.     Defendant, Erin Choi sought to target public and private figures, agencies, and organizations involved in judicial, employment, and disciplinary and/or professional misconduct, including without limitation, judges, past and prospective employers, professional licensing boards who rely on a person's good moral character and conduct in their decision-making procedure.

125.     The Complaint is referenced herein as Exhibit E.  The Complaint as a whole in various specific statement describing Ms. Saidana's injuries, states or implies that Ochei is a

vicious attacker. The complaint is written in such a way that it would induce a reasonable person to deem Ochei capable of violence.

126.    Defendant, Erin Choi's reliance on a transparently fabricated evidence in his prosecution of Ochei was baseless, and placed Ochei in a woefully injurious false and defamatory light.

127.    Defendant, Erin Choi conspired with Officer Kalkau and swore out a false complaint against Ochei and placed her in this false light in reckless disregard of whether his accusation to this effect was true and merely in aid of his collateral purpose to place Ochei in a disadvantageous position in her litigations against her landlord and employers, notwithstanding the devastating consequence of his action for Ochei.

128.    In addition to prosecuting Ochei wrongfully and baselessly, based on false complaint, Erin Choi filed a false statement by Angela Saidana as a SUPPORTING DEPOSITION 100.20 C.P.L. (exhibit D), defamatory in their face and in the context in which they appeared in reckless disregard whether the deposition was true.

129.    On information and belief, at no time prior to the filing of this defamatory complaint did defendant Erin Choi view the surveillance video or seek input from eyewitnesses at the time of Ochei's arrest.

130.    Defendant, Erin Choi's failure to seek input or obtain input from eyewitnesses was magnified by the fact that defendant, Erin Choi requested seven adjournments of trial over a period of eighteen (18) months.

131.    On information and belief, the district attorney's office has a policy of conducting an investigation by gathering evidence and interviewing eyewitnesses at the scene of a crime. In this case, there was no proof that defendant, Erin Choi viewed the subject surveillance video or

interviewed unrelated eyewitnesses whose accounts of the incident prior to Ochei's arrest

dramatically differ from Officer Kalkau's description of the incident. But the DA's office

imagined or was counseled that a guilty plea by Ochei would help shield it from liability for

defamation. The DA knew or should have known that Officer Kalkau's Complaint was in fact

defamatory toward Ochei.

132.    Defendant Officer Kalkau's complaint was used in prosecuting Ochei by the

DA's office without the DA taking appropriate steps to satisfy itself regarding the accuracy or

fairness of defendants, Erin Choi, Officer Kalkau and Angela Saidana's libeling of Ochei.

133.    The DA simply gave Erin Choi free rein to defame Ochei as he saw fit in the

eighteen (18) months following Ochei's arrest without requiring him to justify Officer Kalkua's

and Angela Saidana's damning allegation.

134.    At the time of criminal proceedings against Ochei, the DA considered itself the

city's only prosecutors of criminal defenders, and was generally recognized as the most

prominent influential prosecutors in the country.

135.    The initiation of criminal proceedings against Ochei by defendant, Erin Choi with

its intended purpose to defame Ochei among other things, gave rise to severe notoriety gravely

injurious to Ochei. The injury to Ochei's reputation was all the more severe given the status and

prosecutory clout of the DA.

136.    Defendant Erin Choi knowingly and recklessly traded off Ochei's good name in

return for his, Erin Choi's private aggrandizement as the one who showed Ochei's vicious and

dangerous character. This defamatory trade-off accomplished in derogation of Erin Choi's

elementary obligations of professionalism and fairness as a prosecutor, was malicious, willful,

and oppressive to Ochei's great detriment. Defendant Erin Choi intentional, knowing, and

cynical public campaign of subordinating Ochei's name, reputation and well being to his Erin Choi's private vigilante agenda was calculated to inflict severe emotional distress upon Ochei, which it did

137.   Defendants, The City of New York and the DA, Robert M. Morgenthau knowingly and recklessly suffered defendant Erin Choi repeatedly to compel Ochei to appear in front of the judges, and to defend against a crime she did not commit without regard to the truth or falsity of the complaint and deposition filed in the criminal court.

138.   All of these factual misrepresentations by defendant Erin Choi coupled with his hasty filing of the false complaint by Officer Kalkau and deposition by Angela Saidana create an undeniable inference that Erin Choi was excessively eager to advance his personal position at the DA's office by initiating and filing The People's Certificate of Readiness and pursuing criminal proceeding without reasonable investigation of the facts and motivated by improper purpose.

E.   **The Court Denied Plaintiff a Fair and Speedy Trial**

139.   Following her arraignment on May, 15, 2008, Ochei made additional seven appearances in front of the judges before the charge against her was finally dismissed on November 16, 2009.

140.   During most of Ochei's visits to the Criminal Courthouse in 2008, Ochei had to wait approximately 6-8 hours before appearing in front of the judges.  Ochei's court appointed counsel, Ms. Laura Stasior was never present in Court when Ochei appeared in front of the judges, except on May 15, 2008.

141.   Even though Ochei's counsel was never present in court during her appearances in front of the judges, Ochei was never allowed to speak, except when asked by the judges whether she would accept the ADAs' plea bargain offers and plead guilty to a violation.

142.    On each of her visit to the Criminal Courthouse in 2008, Ochei repeatedly asked questions to determine if her Court appointed counsel would appear in front of the judges with her and she was always assured that her lawyer would be there, but that never happened.

143.    Subsequent to each court visit that Ochei's counsel failed to appear in front of the judge with her, Ochei would always contact her counsel to inquire as to why her counsel failed to appear in court.

144.    To her disappointment and frustration, Ochei never received any satisfactory answer from her counsel regarding this matter.

145.    Due to all these conflictive and sometimes confusing issues, Ochei not only felt unjustly prosecuted, but she also felt persecuted and oppressed by the system.

146.    Finally, Ochei decided to take the matter one step further by filing complaints with the FBI, the Congressman, and the Public Advocate. But Ochei did not receive any response from any of these agencies or agents. Ochei also requested a meeting with her counsel and she was granted a meeting.

147.    During Ochei's meeting with her counsel in November 2008, Ochei requested copies of her file and she also expressed her wish to seek another counsel or proceed *pro se.*

148.    In response to Ochei's request, Ochei's counsel informed her that due to recent changes in her schedule, she would be able to devote more time to Ochei's case.

149.    In December 2008, one week after holding a meeting with Ochei and one day after asking Ochei to decide whether or not she wanted to continue the attorney/client relationship with her counsel, Ochei received an email from her counsel informing Ochei that the judge had assigned her case to another attorney.

150.    Ochei initially reacted to this unexpected change by unsuccessfully requesting a

new counsel through The Legal Aid Society before contacting the Criminal Court clerk's office to request information on how to proceed as *pro se* defendant. Ochei was advised to make an oral motion during her next appearance in front of the judge.

151.    Ochei's initial apprehension with regard to this change quickly disappeared after she received copies of her file from her new Court appointed counsel who later conducted a detailed interview with Ochei before her next court appearance on January 14, 2009.

152.    After being contacted by an investigator assigned to Ochei's case by her new counsel, Ochei expressed her disapproval of this late hour investigation to both her counsel and this investigator by informing them of her belief that this investigation would not yield any substantive result, especially after The Legal Aid Society investigators had already conducted earlier investigations and subsequently served the landlord with *subpoena duses tecum* to compel Ochei's landlord to deliver a copy of the surveillance video monitoring the lobby of her building during the incident prior to Ochei's arrest.

153.    On the following dates: January 14, 2009, March 17, 2009, and May 19, 2009, Ochei appeared in front of the Judges with her new court appointed counsel. But the Court continued to exclude Ochei from making any statement in front of the Judges. Even a plea of not guilty was entered by her counsel while Ochei stood silently beside him without being addressed by the Judges.

154.    After yet another adjournment to September 10, 2009, Ochei had a discussion with her counsel in which she informed her counsel that she would like to appear in front of the Judge again to request that the Judge relieve the counsel from her case.

155.    On her second appearance in front of the Hon. J. Burke on May 19, 2009, in addition to her oral motion to proceed *pro se*, Ochei also made a motion for a grand jury

investigation of her case.

156.    Both motions were apparently denied or ignored by the Hon. J. Burke.

157.    Based on the Hon. J. Burke's response to Ochei's motions and the subsequent representation of Ochei on September 10, 2009, by the same counsel whom Ochei asked the Hon. J. Burke to relieve from her case, it became clear to Ochei that her motions on May 19, 2009, was either denied or ignored.

158.    After appearing in front of another judge with her counsel on September 10, 2009, Ochei informed her counsel that she was going to file a motion to dismiss, and also commence a civil action in connection with this matter.

159.    On her last court appearance on November 16, 2009, without an attorney, Ochei appeared in front of the Hon. J. Burke who informed her that the charge against her has been dismissed.

160.    The arrest, ensuing incarceration, and defense of invalid charge caused economic and emotional damages for which Ochei is entitled to be compensated

F.    **Ochei's Landlord**

161.    Since 2004, Ochei began noticing a pattern of unlawful conduct by her landlord that were similar to the pattern of illegal eviction tactic engaged in by her landlord during the period between 1988 and around 1996.

162.    During this above-mentioned period, Ochei's landlord engaged in a series of terrorist eviction activities in the following manner:

(a)    by illegally breaking into Ochei's room and stealing her personal properties,

(b)    by illegally planting thugs masquerading as tenants to terrorize Ochei by among other things blocking Ochei's movement along the hallway with huge cart, and

physically attacking her,

(c)     by illegally instigating the police not to arrest Ochei's attackers.  On the day of, Ochei's attack by a group of about ten of these so called tenants, police ordered these people to enter into the rooms opposite ochei's room and refused to question them following Ochei's report of the incident that prompted the 911 call,

(d)     by illegally instigating a tenant named Shirley Peck to make a false claim of assault against Ochei with regard to an incident in which Ochei was assaulted by this lady who threw hot water at Ochei and hit her with a pot when Ochei answered her door to address this lady's claim that the sound from Ochei's clock radio in Room 420 was disturbing Shirley Peck in Room 407,

(e)     by illegally instigating the police to falsify evidence in order to arrest Ochei. Upon arriving in front of Ochei's door, with Shirley Peck standing there with the pot that she hit Ochei with still in her hand, the police instructed her to state that the pot actually belonged to Ochei, and then proceeded to arrest Ochei by charging her with assault and illegal possession of weapon on account of the pot that was taken from Shirley Peck,

(f)     by illegally conspiring with the police to arrest Ochei.  Following Ochei's arrest in connection with the above-mentioned incident, Ochei was kept in police custody for nearly 48 hours and subsequently made several court appearances before the charges against her was finally dismissed,

(g)     by illegally breaking down Ochei's door and removing all of her personal property inside her room while she was in police custody following her arrest,

(h)     by illegally allowing strange men and police officers to come and be knocking at

Ochei's door in the middle of the night,

(i)    by placing numerous false eviction notices in front of Ochei's door, thereby, compelling Ochei to go to the housing court on numerous occasions to answer these non-existent eviction proceedings,

(j)    by commencing frivolous eviction proceeding against Ochei thereby requiring Ochei to make numerous court appearances before the case was dismiss in the housing court,

(k)    by illegally converting the public toilet system in the community hallway to private toilet system, thereby causing constant clogging of the toilet bowls and flooding in the hallway, and

(l)    by illegally dismantling the public kitchen in the hallway and sealing the janitor's door thus preventing access to the kitchen and janitor's sink next to the kitchen.

163.    Similar to the events between 1988 and 1996, in or about 2004, Ochei's landlord began another pattern of terrorist eviction activities against Ochei.

164.    In or about 2004, Ochei's landlord returned a check that she paid her rent with and demanded that Ochei address the check to Alladin Hotel instead of Longacre Hotel as Ochei had done for nearly twenty years.

165.    Ochei responded by requesting a legal notice of change of ownership of the building which her landlord failed to provide.  Instead, Ochei's landlord started rejecting rent payments from Ochei.

166.    Beginning around 2006, Ochei started seeing a lot of unfamiliar faces on the fourth floor.

167.    Ochei also started noticing that some of these people were actually targeting her

by deliberating occupying the bathrooms to delay Ochei's access to the bathrooms for approximately 30-60 minutes.  When Ochei finally got inside the bathroom, these people would come and be knocking at the bathroom door.  While these harassments were going on, Ochei discovered that the locks to the bathroom doors were defective and unsafe.

168.    Less than one month after being fired from her job, the harassment against Ochei escalated to a new level.

169.    Between 2005 and 2007, Ochei made several complaints to her landlord regarding damages to her furniture caused by excessive steam that was gushing from the radiator.  Ochei's complaint was totally ignored.

170.    After this damage started extending to the units below Ochei's room, her landlord started accusing Ochei of causing damages to the building and then began serving Ochei with false eviction notices through their attorney, Offer Waide of Rattner & Waide, 26 Broadway, 21st Floor, New York, NY, 10004.

171.    In 2008, Ochei's landlord through their attorney Offer Waide, served Ochei with four separate petitions as listed below:

     (i)   1/24/2008      Ten (10) Day Notice to Cure,

     (ii)  2/25/2008      Ten (10) Day Notice of Termination,

     (iii) 5/28/2008      Hold-Over Dwelling: L&T Index No. 69181/08,

     (vi)  11/13/2008    Five (5) Day Demand Notice for "RENT OWED" January 2004 through November 2008,

172.    Ochei repeatedly consulted an attorney to review these court papers and to seek legal representation.  Of all these court papers, only one for Hold-Over Dwelling was actually filed in court at the Civil Court of The City of New York, Part A, Room 523.

173.    Pursuant to this Hold Over proceeding, Ochei appeared in court on the following dates: 1) May 28, 2008; 2) June 20, 2008; and 3) July 24, 2008.  On the last date in Court, a default judgment was issued against the landlord for failing to respond to Ochei's motion and also for failing to appear in court on this court date, July 24, 2008 (Exhibit E).

174.    The landlord repeatedly caused or permitted acts or omissions that substantially interfered with or disturbed the comfort, peace or quiet of Ochei as a tenant.

175.    All these lawsuits listed above were frivolously pursued with the intention to interfere with the comfort, peace, and quiet of Ochei as a tenant as Ochei's landlord had no legal basis for serving any legal notice or pursuing any lawsuit against Ochei.

176.    The above cited "RENT OWED" is part of landlord's acts of harassment against the plaintiff.

177.    The above-mentioned events including acts of initiating frivolous lawsuits, instigating physical attacks and police arrest, are simply repeat of similar pattern of harassments between 1988 and the mid 1990s.

178.    Similar to the pattern of events between 1988 and the mid 1990s, on information and belief, since around 2006, the landlord began renting the rooms out to persons who were masquerading as homeless couples residing in the building on transitional basis.  But in reality, some of these couples were thugs that were placed in the subject premises to terrorize the place by among other things,

(a)    playing very  loud "disco" like and heavy instrumental music with stereo sound system,

(b)    clogging and filling up the toilet bowl,

(c)    blocking plaintiff's access to the bathroom by repeatedly occupying or pretending

to occupy the bathroom by closing the bathroom door and running the shower even when not in use,

(d)    flooding and littering the bathroom floor with large pool of water and used toilet tissues,

(e)    making loud vocal sounds in the hallway at all hours, including midnights, and

(f)    repeatedly overloading the electrical power system with heavy appliances thereby causing frequent power outage, and long interruption of electricity.

179.    Following these repetitive violations of the housing code, including, constant power outage, lack of heat and hot water, and constant confrontation with, and threats of arrest by police officers who responded to Ochei's calls to 311 and 911, finally on February 4, 2009, Ochei commenced an HPD action against her landlord in the housing court.

180.    In addition to her appearances at the criminal court in 2009, Ochei made numerous court appearances at the housing court before Ochei's landlord was finally fined for the most serious code violation (Exhibit F).

181.    Plaintiff has also had occasions where some of these so called tenants gathered in the hallway and started making derogatory remarks and insulting comments as part of ongoing attempts to provoke confrontation.

182.    At one incident, one of these couples physically confronted the plaintiff inside the cubicle-like bathroom entrance as the female partner crowded plaintiff in front of the bathroom door while the male companion stood and kept watch of the hallway.

183.    Subsequent to the above-referenced incident, the male companion began stalking Ochei. This prompted Ochei to file numerous police report through the 311, and a police lieutenant from the 18 precinct visited the premise and spoke to this male individual.

184.    Even though this couple were moved to another floor, the male individual continued to stalk Ochei at the lobby and by visiting Ochei's floor.

185.    On September 12, 2009, on her way out of the building, Ochei met this male individual at the hallway in front of Room 410. Upon returning from her trip to the store, Ochei discovered that the lock to her door had been damage and the door panel broken.

186.    Despite plaintiff's report to the landlord's counsel regarding this damage, the damage has not been repaired.

187.    The landlord's action in renting the subject premises out to male and female couples, subject single female residents like the plaintiff to the danger of possible attack by allowing strange men and women to share the same public bathrooms with defective and unsafe locks at the doors.

188.    The repeated acts of harassments by the landlord and their agents, including defendant, Angela Saidana that are intended to cause plaintiff to vacate her dwelling unit or to surrender or waive her rights in relation to her occupancy of the dwelling unit is a class c immediately hazardous violation as defined by § 27-2005 (d) of the Administrative Code of the City of New York.

189.    In the above-referenced HPD action and in accordance with the Administrative Code of the City of New York, Ochei made the following request to the Court:

(i)     find that landlord, and its agents, including Angela Saidana have harassed plaintiff pursuant to 27-2005[d];

(ii)    decide that a class c violation existed at the time the harassment occurred;

(iii)   order the landlord and their agents, including Angela Saidana to stop

34

harassing the plaintiff under 27-2005[d] and 27-2121;

    (iv)    order the landlord to pay to the Department of Housing Preservation and

Development civil penalties for no less than $1,000 and not more than

$5,000 for each dwelling unit in which violations are found following

27-2115(m); and

    (v)    award such other further relief as this court deems just and proper.

190.    Despite the Court Order, some of the above-referenced violations still exist,

including but not limited to the defective and unsafe locks at the bathroom doors, continuing acts

of harassments, including one physical attack and one police threat.

<u>FIRST CAUSE OF ACTION</u>
<u>VIOLATION OF 42 U.S.C. § 1983</u>:
<u>ARREST</u>

191.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 190 as if separately set forth herein.

191.    At all times relevant herein, the conduct of all defendants were subject to 42

U.S.C. § 1983, 1985, 1986, and 1988.

192.    Acting under color of law, defendants worked a denial of Ochei's rights,

privileges or immunities secured by the United States Constitution or by Federal law,

    (a)    by depriving Ochei of her liberty without due process of law, by taking her into

custody and holding her there against her will,

    (b)    by making an unreasonable search and seizure of her property without due process

of law,

    (c)    by conspiring for the purpose of impeding and hindering the due course of justice

with intent to deny Ochei equal protection of laws,

(d)  by refusing or neglecting to prevent such deprivations and denials to plaintiff,

thereby depriving plaintiff of her rights, privileges, and immunities as guaranteed

by the Fourth, Fifth, Fourteenth Amendments to the Constitution of the United

States.

194.    The individual defendants, Officer Kalkau, Officer Martin, and Supervisor "John

Doe" are New York City Police Officers, who were, at all times relevant herein acting within the

course and scope of their employment and under color of state law on May 14, 2008, at

approximately 8:30 a.m. to 4:00 p.m.

195.    On or about May 14, 2008, at approximately 8:30 a.m. plaintiff called 911 on

account of injury she sustained from being pushed to the ground by her landlord's agent Ms.

Saidana when Officer Kalkau who arrived at the scene fabricated evidence, seized her personal

belongings, and arrested her.

196.    Plaintiff was later searched at the public area of 18 precinct by Officer Martin

before being detained first at the 18 precinct, by order of Supervisor "John Doe", before being

taken in handcuff by police patrol car to police headquarter, thus she remained in custody

without food or drink for approximately thirty (30) hours, and additional six (6) hours at the

hospital without food or drink.

197.    Defendant Officer Kalkau denied Ochei immediate medical care by ordering the

emergency medical service ("EMS") personnel who responded to plaintiff's 911 call not to attend

to plaintiff and to leave the area where plaintiff was waiting for medical intervention.

198.    Defendant Officer Kalkau told Ochei that she was being arrested on assault

charge even though both Ochei and other eyewitnesses at the scene informed Officer Kalkau that

Ochei was the victim.

199.    Next Officer Kalkau seized Ochei's personal belongings, handcuffed her, and put her into the patrol car under the guard of Officer Kalkau's partner where Officer Kalkau informed his partner that he, Officer Kalkau was returning Ochei's personal belongings back to Ochei's room.

200.    At no time, either inside the social service office or at any later time and place did Ochei attempt to resist arrest or offer violence to the police officers.

201.    Defendants intended to restrict plaintiff's movement. Plaintiff's freedom of movement was directly restricted by the acts of the defendants by illegally denying her medical care, handcuffing her hand to her back, and to a bench and detaining plaintiff without reasonable suspicion or probable cause.

202.    At all times relevant herein, plaintiff was aware that her freedom of movement was restricted and suffered great humiliation, injury to her reputation, emotional injuries, and damages as a result of being falsely arrested and searched, and detained for assault

203.    Defendant Officer Kalkau swore out and signed the Complaint against plaintiff alleging as follows:

On May 14, 2008, at about 08:10 hours at 317 West 45th Street in the County and State of New York, the Defendant committed the offense of

1.  PL120.00(1)  Assault in the Third Degree (1 count)

The defendant with intent to cause physical injury to another person, caused such injury to another person.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Angela Saidana, of an address known to the District Attorney's Office, the informant observed the defendant repeatedly strike informant about informant's body, to wit, informant's arms, face and chest, with defendant's open fist, causing informant to suffer lacerations to informant's chest and left arm, swelling

and redness to informant's left eye, and causing informant to suffer substantial pain. (Exhibit E).

204.    There was no warrant for the arrest, body search, and detention of plaintiff on May 14, 2008 by Officer Kalkau, Officer Martin, and Supervisor "John Doe". The arrest, search and detention of plaintiff was without reasonable grounds for said Defendants to believe Ochei had committed an offense and defendants knew they were without probable cause to arrest, search and detain Ochei.

205.    By arresting plaintiff under color of state law without probable cause, defendants Officer Kalkau, Officer Martin, and Supervisor "John Doe" violated the Fourth Amendment of the United States Constitution's prohibition against unreasonable searches and seizures, made applicable to the states under the Fourteenth Amendment which the Congress has provided a remedy under 42 U.S.C. § 1983.

206.    As a result of the concerted unlawful and malicious arrest by defendants, Officer Kalkau, Officer Martin, and Supervisor "John Doe", Ochei was deprived of both her liberty without due process of law, and her right to equal protection of the laws, and the course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

207.    Defendants have caused damages to plaintiff by their false arrest and detention of plaintiff. And plaintiff is entitled to recover against the defendants for injuries, damages, losses proximately caused by the false arrest as set forth in this Complaint.

208.    For the false arrest, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

SECOND CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
DETENTION AND CONFINEMENT

209. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 208 as if separately set forth herein.

210. As a result of their concerted unlawful and malicious detention and confinement of Ochei, defendants Officer Kalkau, Supervisor "John Doe," deprived of both her right to her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983

211. Defendants' conduct in detaining and confining plaintiff which resulted in the deprivation of plaintiff's constitutionally-protected right of liberty was intentional, extreme and outrageous, and thereby entitles plaintiff to an award of punitive damages.

212. For the false detention and confinement, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

THIRD CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
BODY SEARCH

213. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 212 as if separately set forth herein.

214. As a result of their concerted unlawful and malicious arrest, detention, and Confinement, Officer Kalkau, Officer Martin, Supervisor "John Doe," caused Ochei to be subjected at the public area of the 18 precinct lobby, and at the police headquarter at 1 Police Plaza detainees' holding area to body search by unzipping plaintiff's pants, pulling her clothes

and patting different parts of her body, including her breast, in a situation where there was no reason to believe that weapons or contraband had been concealed on or in her body, and thus deprived Ochei of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

215.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

216.    Defendants have caused the injuries, damages, and losses to plaintiff by their outrageous conduct; plaintiff is entitled to recover against the defendants for injuries and damages.

217.    For the body search, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

FOURTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
PRIVACY

218.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 217 as if separately set forth herein.

219.    At a minimum, and pursuant to the Fourth Amendment of the United States Constitution, plaintiff had a reasonable expectation of privacy with respect to indecent exposure of her body at a public area by Officer Martin, and the unauthorized entry into plaintiff's room by Officer Kalkau when plaintiff was in handcuff under the custody of Officer Kalkau's partner inside police patrol car.

220.    In as much as Officer Kalkau was in possession of the keys to plaintiff's room,

and had free access to plaintiff's room, it is believed and therefore averred that Officer Kalkau

had the ability to search and remove any item from plaintiff's room or place any item therein

without her permission and authorization, all of which is embarrassing and humiliating.

221.    As the search of plaintiff's body and entry into her room was sudden and

unexpected, it is believed and therefore averred that Officer Kalkau and Officer Martin may have

put Ochei in a compromising or embarrassing positions, including but not limited to

inappropriate placement of items on her body and in her room.

222.    Defendants' conduct in invading plaintiff's privacy which resulted in the

deprivation of plaintiff's constitutionally-protected right of liberty was intentional, extreme and

outrageous, and thereby entitles plaintiff to an award of punitive damages.

223.    For the violation of plaintiff's privacy, defendants are all therefore jointly and

severally liable for actual, general, special, compensatory damages, and for punitive damages in

amounts appropriate to the proof at trial.

FIFTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
CONSPIRACY

224.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 223 as if separately set forth herein.

225.    As a result of the concerted unlawful and malicious conspiracy of defendants the

landlord, Angela Saidana, Officer Kalkau, Officer Martin, Supervisor "John Doe," Erin Choi,

and Hon. J. Burke, Ochei was deprived of both her liberty without due process of law and her

right to equal protection of the laws, and the due course of justice was impeded, in violation of

the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and

42 U.S.C. § 1983.

226.    Defendants the landlord, Angela Saidana, Brendan Kalkau, "Jane Doe" Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke had an ulterior motive, including but not limited to personal financial benefit, for arresting, detaining Ochei and charging her with crimes she had not committed.

227.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

228.    For the conspiracy, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

SIXTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
REFUSING OR NEGLECTING TO PREVENT

229.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 228 as if separately set forth herein.

230.    At all times relevant to this Complaint, defendants Officer Kalkau, Officer Martin, Supervisor "John Doe," and NYPD were acting under the direction and control of defendants Raymond W. Kelly and NYC. Defendants Erin Choi was acting under the direction and control of Robert M. Morgenthau and NYC. Defendant Hon. J. Burke was acting as a final decision maker and under the direction and control of NYC. Defendant, Angela Saidana was acting under the direction and control of the landlord and owner, Alan Lapes

231.    Acting under color of law and pursuant to official policy or custom, defendants Raymond W. Kelly, Robert M. Morgenthau and NYC knowingly and recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants police officers and assistant district attorneys in their duties to refrain from:

42

(a)     unlawfully and maliciously harassing a person who was acting in accordance with
        her constitutional and statutory rights, privileges, and immunities,

(b)     unlawfully and maliciously arresting, imprisoning and prosecuting a person who
        was acting in accordance with her constitutional and statutory rights, privileges,
        and immunities,

(c)     conspiring to violate the rights, privileges, and immunities guaranteed to plaintiff
        by the constitution and laws of the United States and the State of New York,

(d)     otherwise depriving plaintiff of her constitutional and statutory rights, privileges,
        and immunities.

232.    Defendants the landlord, Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau,
Hon. J. Burke, and NYC had knowledge or, had they diligently exercised those duties to instruct,
supervise, control, and discipline on a continuing basis, should have had knowledge that the
wrongs conspired to be done as heretofore alleged, were about to be committed.  The landlord,
Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and NYC had the power
to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable
diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

233.    Defendants Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and NYC
directly or indirectly, under color of law, approved or ratified the unlawful deliberate malicious
reckless, and wanton conduct of defendants police officers, and assistant district attorneys.  The
landlord and Alan Lapes approved or ratified the unlawful malicious reckless, and wanton
conduct of its agents, officers, and employees, including, Angela Saidana.

234.    As a direct and proximate cause of the neglect and intentional acts of defendants,
the landlord, Alan Lapes, Raymond W. Kelly, Robert M. Morgenthau, Hon. J. Burke, and NYC

as set forth in paragraphs 230 to 233 above, plaintiff suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §1983.

235.    For refusing or neglecting to prevent, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

SEVENTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983:
CIVIL RIGHTS ACT

236.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 as if separately set forth herein.

237.    Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and Laws, shall be liable to the party injured at law, suit in equity or other proper proceeding for redress....

238.    All defendants are persons within the meaning of § 1983, in that at all times material hereto, they were acting under the color of state law as a political subdivision of the State of New York, or a representative thereof.

239.    Defendants' denial of medical care to plaintiff, and defendants' arrest, body search, detention, and prosecution of plaintiff was without probable cause and in violation of her civil rights under the United States Constitution and the New York State Constitution.

240.    There was no warrant for the arrest, body search, detention on May 14, 2008, and

there was no ground for the prosecution and seven adjournments of trial for eighteen (18) months between May 15, 2008, and November 16, 2009.  The arrest, body search and detention of plaintiff was without reasonable grounds for said defendants to believe Ochei had committed an offense and defendants knew they were without probable cause to arrest, search, detain and prosecute Ochei.

241.    Plaintiff was charged with the offence of assault in the third degree without probable cause, in violation of plaintiff's rights under the United States Constitution and the New York State Constitution.  The defendants had actual and constructive notice of the pervasive constitutional violations perpetrated by the defendants upon plaintiff.

242.    At all times relevant hereto, the individual defendants acted willfully and wantonly and with deliberate indifference to the rights and feelings of the plaintiff.

243.    At all times relevant hereto, the individual defendants acted in accordance with an established policy, practice, custom, and/or procedure which violated the plaintiff's known constitutional rights.  Upon information and belief, the defendants acted in accordance with the unconstitutional policy, which authorized police officers to deny individuals medical attention, refuse to take report from witnesses who volunteered to give statement with regard to their account of the incidents prior to Ochei's arrest, and to arrest plaintiff based on mere fabrication of evidence.  Defendant Erin Choi prosecuted Ochei knowing that Officer Kalkau's sworn and signed Complaint and Ms. Saidana deposition to be false, and Hon. J. Burke deliberately delayed trial and denied Ochei an opportunity for self defense without reasonable cause.

244.    As a result of the concerted unlawful and malicious arrest, prosecution and seven adjournments of trial by defendants Officer Kalkau, Officer Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, Ochei was deprived of liberty without due process of law, the right to

confront her accusers, and her right to equal protection of the laws, and the due course of justice

was impeded, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendment of the

Constitution of the United States and 42 U.S.C. § 1983

245.     Defendants' actions constitute a willful and knowing violation and deprivation of

a right secured by the Constitution of the United States in violation of 42 U.S.C.§ 1983,

specifically, the right to be free from excessive and unreasonable police action; the deprivation

of liberty and possessions without due process of law; the right to be secure against unreasonable

searches and seizures; the right to privacy; the right to confront her accusers; and the right to

equal protection of the laws.

246.     The acts of all defendants in violation of the United States Constitutional rights of

plaintiff justify an award of reasonable fees under 42 U.S.C. § 1988 and plaintiff is entitled to

recover against all defendants for injuries, damages, and losses proximately caused by the

conduct as set forth in this Complaint.

EIGHTH CAUSE OF ACTION
FEDERAL FAIRS HOUSING ACT
VIOLATION OF 42 U.S.C. § 3601 *et seq.*

247.     Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 246 as if separately set forth herein.

248.     Section 804(4) of the Fair Housing Act, 42 U.S.C. § 3604(a) states in pertinent

part:

> It shall be unlawful to refuse to rent after making of a *bona fide*
> offer, or to negotiate rental of, or otherwise make unavailable or
> deny, a dwelling to any person because of race or national origin

249.     Defendants, the landlord's conduct as set forth above constitute a refusal to rent or

the refusal to negotiate the sale of, or a denial of housing on the basis of race or color or national

46

origin in violation of Section 804(4) of the Fair Housing Act, 42 U.S.C. § 3604(a)

250.    Section 804(b) of the Fair Housing Act, 42 U.S.C. § 3604(b) states in pertinent part:

> It shall be unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith because of race or national origin

251.    Defendants, the landlord's conduct as set forth above, including but not limited to continuous acts of harassments and intimidations constitute discrimination against plaintiff in the terms, conditions, or privileges of rental of a dwelling, and/or in the provision of services or facilities in connection therewith because of race, color or national origin in violation of Section 804(4) of the Fair Housing Act, 42 U.S.C. § 3604(b)

252.    Section 805 of the Fair Housing Act, 42 U.S.C. § 3605 states in pertinent part:

> It shall be unlawful for any person... whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race or national origin

253.    Defendants, the landlord's conduct as set forth above, including, but not limited to refusing to accept rent payment from plaintiff since November 2004, constant interruption of essential services constitute discrimination against a person in making available residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race or national origin in violation of Section 805 of the Fair Housing Act, 42 U.S.C. § 3605

254.    Section 3617 of the Fair Housing Act, 42 U.S.C. § 3617 states in pertinent part:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed,... any right granted or protected by section 803, 804, 805 of this title

255.    The action of the landlord, and Angela Saidana in making false allegation, and

defendants, Officer Kalkau, Officer Martin, Supervisor "John Doe," Erin Choi, and Hon. J.

Burke's conduct as set forth above and said defendants' action by arresting, detaining and

prosecuting Ochei without reasonable grounds for them to believe Ochei had committed an

offense and without probable cause to do so, constitutes unlawful coercion, intimidation, threat

and interference with plaintiff's right in the exercise and enjoyment of the right granted and

protected by section 803, 804, 805 of the Fair Housing Act.

256.   Plaintiff is an aggrieved person as defined in 42 U.S.C. § 3602(1), has been

injured by the Defendants' discriminatory conduct, and has suffered damages as a result.

257.   Defendants' conduct was intentional, willful, and made in disregard for the rights

of others

258.   Accordingly, under 42 U.S.C. § 3613(c), plaintiff is entitled to actual damages,

punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

NINETH CAUSE OF ACTION
FEDERAL FAIRS HOUSING ACT
VIOLATION OF 42 U.S.C. § 1981 and § 1982

259.   Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 258 as if separately set forth herein.

260.   Defendants' conduct as set forth above prevented and continues to prevent Ochei

from enjoying the same right to make and enforce contract as is enjoyed by white citizens under

§ 1981 of the Civil Rights Act of 1866 and the same right to rent real property as is enjoyed by

white citizens under § 1982 of the Civil Rights Act of 1866.

261.   Plaintiff has been injured by the Defendants' discriminatory conduct and has

suffered damages as a result.

262.   Defendants' conduct was intentional, willful, and made in disregard for the rights

of others

263.    Accordingly, under 42 U.S.C. §§ 1981, 1982 and 1988, plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

TENTH CAUSE OF ACTION
VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
NEW YORK EXECUTIVE LAW § 290 et seq.

264.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 263 as if separately set forth herein.

265.    At all times relevant herein the conduct of all defendants were subject to the New York States Human Rights Law.

266.    Defendants' conduct as set forth above constitute a refusal or a denial of housing accommodation, or withholding of a housing accommodation, because of race, color, or national origin in violation of article 15 of the New York Executive Law § 296(5)(1).

267.    Defendants' conduct as set forth above constitutes discrimination because of race, color or national origin in terms, conditions or privileges of the rental of housing accommodation or in the furnishing of facilities or services in connection therewith in violation of the New York Executive Law § 296(5)(a)(2).

268.    Defendants' conduct as set forth above constitutes refusal to rent housing accommodation or to refuse to negotiate for the rental of housing accommodation because of plaintiff's race, color or national origin in violation of the New York Executive Law § 296(5)(c)(1), in violation of the New York Executive Law § 296(6)

269.    Defendants, the landlord, Alan Lapes, Ms. Saidana, Brendan Kalkau, "Jane Doe" Martin, Supervisor "John Doe," Erin Choi, and Hon. J. Burke, interfered with or attempted to interfere by threats, intimidation, or coercion with plaintiff's exercise and enjoyment of her

rights – e.g. her rights to her liberty, her right to occupy her real property, specifically, her apartment/room, at 317 West 45th Street, Apt 420, New York, NY, 10036, and her right to due process secured by the state and federal constitutions or laws of the United States and/or the State of New York.

270.     Thus, under color of law, Ochei's liberty was threatened, and she was intimidated and coerced into implicitly pleading guilty and getting punished by being forced to make eight appearances in front of the judges without permission to enforce her right to confront her accusers, and to give up her possessory right.

271.     Defendants' conduct as set forth above constitute aiding, abetting inciting, compelling or coercing the doing of the acts forbidden by New York Executive § 296(5), in violation of the New York Executive Law § 296(6)

272.     Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

273.     As a direct and proximate result of the conduct of the defendants, Ochei was intimidated and put in continuing anxiety and has suffered damages including but not limited to the aforementioned damages.

274.     Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

275.     Defendants' conduct was intentional, willful, and made in disregard for the rights of others

276.     Accordingly, under Article 15 of the New York Executive Law § 297, plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW
## NEW YORK CITY ADMINISTRATIVE CODE LAW § 8-107

277.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 276 as if separately set forth herein.

278.    At all times relevant herein the conduct of all defendants were subject to the New York City Human Rights Law.

279.    Defendants' conduct as set forth above constitute a refusal to rent, approve the rental, or otherwise deny to or a withholding of a housing accommodation or an interest therein, because of plaintiff's actual or perceived race, color, or national origin in violation of the New York Administrative Code § 8-107(5)(a)(1).

280.    Defendants' conduct as set forth above constitutes discrimination against plaintiff because of plaintiff's actual or perceived race, color or national origin in violation of the New York Administrative Code § 8-107(5)(a)(2).

281.    Defendants' conduct as set forth above constitutes discriminatory practice by real estate brokers in refusing to rent a housing accommodation or to negotiate for rental of a housing accommodation because of plaintiff's actual or perceived race, color or national origin in violation of the New York Administrative Code § 8-107(5)(c)(1),

282.    Defendants' conduct as set forth above constitute aiding, abetting inciting, compelling or coercing the doing of the acts forbidden by New York Administrative Code § 8-107(5), or an attempt to do so, in violation of the New York Administrative Code § 8-107(6)

283.    Within ten (10) days of filing this complaint, plaintiff will serve a copy of the complaint on the City Commission on Human Rights and the Corporate Counsel, pursuant to New York City Administrative Code § 8-502(c)

(e)    Defendant, Officer Martin played an active part in the initiation of the criminal proceedings by threatening Ochei with arrest and by introducing Ochei to Officer Supervisor "John Doe" and other police officers at the precinct by stating "here is your subject" upon Ochei's arrival in handcuff at the precinct.

(f)    Defendant, Supervisor "John Doe" played an active part in the initiation of criminal proceedings by ordering that plaintiff be detained, photographed, fingerprinted at 18 precinct, and to transport plaintiff to police headquarters, at 1 Police Plaza for further processing and detention.

(g)    Defendant, Erin Choi played an active part in the malicious prosecution of Ochei by knowingly and recklessly filing false complaint by Officer Kalkau, and false statement by Ms. Saidana in the supporting deposition with the People's Certificate of Readiness, and repeatedly informing the Court that "The People Are Not Ready", thus forcing Ochei to appear in front of the judges eight times and to make an oral motion for a grand jury investigation before the charges against her was finally dismissed.

(h)    Defendant, Hon. J. Burke, played an active part in the malicious prosecution of Ochei by denying her the opportunity to confront her accusers, and by directly or indirectly permitting Ochei's case to be assigned to a new defense counsel without counseling Ochei, and by denying or ignoring Ochei's oral motion to proceed *pro se* and for a grand jury investigation of the matter relating to her arrest and prosecution.

(i)    Defendant, Hon. Burke, played an active part in the malicious prosecution of Ochei by repeatedly granting the ADA's repeated request for adjournments of trial.

295. The charge against Ochei was not based upon probable cause, that is the state of facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Ochei was guilty.

(a) Defendants, Officer Kalkau, Officer Martin, Supervisor "John Doe," and Erin Choi had a duty to ascertain whether there was reasonable and probable cause for an arrest and prosecution, knowing that there was a companion with Ms. Saidana and a security guard on duty at the time of the events leading to Ochei arrest. Defendants Officer Kalkau had a duty to question Ochei and other witnesses including the security guard on duty prior to Ochei's arrest. Defendant, Erin Choi had a duty to ascertain whether the statement submitted by the "informant", Ms. Saidana was true by viewing the surveillance video of the lobby at the time prior to Ochei's arrest. Hon. J. Burke had a duty to ascertain whether Ochei was getting a fair and impartial justice.

(b) Defendants, Officer Kalkau, Officer Martin, Supervisor "John Doe," Erin Choi and Hon. J. Burke breached that duty.

(c) Defendant Erin Choi had information that there was a surveillance camera monitoring the lobby and a security guard on duty at the time of the events leading to Ochei's arrest, he had a duty to ascertain the validity of Ms, Saidana's statement by viewing the surveillance video and failed that duty.

(d) Defendant Erin Choi had a duty and professional obligation of fairness and to conduct proper and reasonable investigation before prosecuting a person, and breached that duty.

(e) Defendant, Ms. Saidana conspired with Officer Kalkau to recklessly formulate a

false complaint based on mere fabrication of facts. Both Ms. Saidana and Officer
Kalkau falsely stated that plaintiff attacked by " repeatedly striking Ms.
Saidana's body, arms, face and chest, with plaintiff's open fist, causing Ms.
Saidana to suffer lacerations to her chest and left arm, swelling and redness to her
left eye, and causing her to suffer substantial pain".

(f)     Defendants, Ms. Saidana incited and instigated and participated in the prosecution
by pressing to arrest and apply for a complaint for an improper purpose[3] – to gain
advantage in the eviction proceeding against plaintiff.

(g)     Defendants, the landlord instigated or participated in the prosecution by
encouraging its agents, employees, and managers to incite the police against
plaintiff.

(h)     Defendant the Hon. J. Burke had a duty to ensure a fair and impartial justice.
Defendant the Hon. J. Burke breached that duty by denying Ochei the opportunity
to confront her accusers, and permitting repeated adjournments of trial, and by
deliberately delaying action on the case by assigning the case to a new public
defender counsel without reasonable cause and without counseling Ochei, and by
denying or ignoring Ochei's motion to proceed *pro se*.

296.    The charge against Ochei was dismissed six months and two additional court
appearances after Ochei contemporaneously, requested a grand jury investigation of the matter
relating to her arrest and prosecution while requesting the Court's permission to proceed *pro se*.

---

[3] Officer Kalkan terminated his questioning of Ochei immediately after obtaining Ochei's ID and
proceeded to inform plaintiff that he was arresting her without any idea of what he was basing plaintiff
arrest on which simply means that the arrest was premeditated. When asked by plaintiff to state what he
was charging Ochei with Officer Kalkau evidently displayed a lack of knowledge of what the charge was
by refusing to answer plaintiff's question until after stepping outside and then returned to inform Ochei
that he was charging her with assault.

297.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

298.    For the malicious prosecution, defendants are all therefore liable for injunctive relief, and for actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

FOURTEENTH CAUSE OF ACTION
MALICIOUS ABUSE OF PROCESS

299.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 298 as if separately set forth herein.

300.    Defendants maliciously used a "legal process 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed'"

301.    After Ochei's counsel repeatedly failed to appear in front of the judges with her, and other unresolved issues in 2008, in December 2008, Ochei requested her counsel's help in reviewing and copying her file in contemplation of either seeking a private criminal defense counsel or proceeding *pro se*. In the midst of discussion to resolve these issues, Ochei's counsel unceremoniously informed her that her case had been assigned to a new public defender counsel.

302.    Based on the information obtained from the new investigator assigned to investigate Ochei's case, it appeared as though he had viewed the surveillance tape of the event prior to Ochei's arrest on May, 14, 2008.

303.    As noted in paragraph 152, plaintiff had expressed her objection to the late hour investigation of her case. Despite the conclusion of investigation of Ochei's case in or about March 2009, on May, 19, 2009, Ochei's case was adjourned to September 10, 2009, by the Hon. J. Burke.

304. The Criminal Court Judge knew that assigning plaintiff's case to a new counsel in December 2008 was groundless and made no attempt to counsel Ochei's regarding this change.

305. Defendant, the Hon. J. Burke knew or should have known that adjourning Ochei's case to September 10, 2009, was groundless and he sought to use the process for an ulterior purpose, including but not limited to the purpose of implicitly coercing plaintiff to accept ADA plea bargain offer and deliberately delaying the prosecution until eighteen (18) months statute of limitation for coercive action expired.

306. Defendants, Officer Kalkau, Officer Martin, and Supervisor "John Doe," Erin, Choi used the legal process with the ulterior purpose of personal financial benefit, and for retaliation against Ochei for having filed several complaints against police officers from the precinct, including Officer Martin.

307. Defendants the landlord, Mr. Lapes, and its agents, and employees, including Ms. Saidana used Ochei's arrest and prosecution to gain advantage in their eviction litigation action.

308. Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

309. For the malicious abuse of process, defendants are all therefore liable for injunctive relief, and for actual, special, compensatory and punitive damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

FIFTEENTH CAUSE OF ACTION
FALSE ARREST AND IMPRISONMENT

310. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 309 as if separately set forth herein.

311. At all times relevant herein, (a) the defendants acted with the intention of confining Ochei within fixed boundaries, (b) the act directly resulted in confinement, and (c)

Ochei was conscious of the confinement

312.    Defendants Officer Kalkau and Supervisor "John Doe" imposed by force or

threats an unlawful restraint upon Ochei's freedom of movement by seizing her belongings,

arresting her and handcuffing her hands behind her back, transporting her first to the 18 precinct

where she was detained for approximately 4-6 hours before being transported to police

headquarter at 1 Police Plaza in lower Manhattan where she was detained with a group of about

20 individuals for additional 20-25 hours.

313.    Defendant, under the color of state law, Officer Martin, after introducing plaintiff

to Officer Supervisor "John Doe", specifically stating, "here is your subject" caused an unlawful

search of plaintiff's body at a public area of the precinct and unlawful imprisonment of plaintiff.

314.    As a direct and proximate result of the conduct of the defendants, Ochei has

suffered harm and damages, including but not limited to the aforementioned damages.

315.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau,

and NYC are liable under the doctrine of *respondeat superior*.

316.    For the false arrest and imprisonment, defendants are all therefore liable for

injunctive relief, and for actual, special, compensatory damages, in an amount deemed at time of

trial to be just, fair, and appropriate to the proof.

SIXTEENTH CAUSE OF ACTION
ASSAULT

317.    Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 316 as if separately set forth herein.

318.    Plaintiff is a reasonable person with good moral character.

319.    Defendants, the landlord and Alan Lapes, its agents, employees, and managers,

including Angela Saidana constantly and intentionally create an apprehension of immediate

332.    Defendants Angela Saidana, Officer Kalkau, Officer Martin and Supervisor "John Doe" are all therefore liable for injunctive relief, and for actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

EIGHTEENTH CAUSE OF ACTION
CONSPRACY

333.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 332 as if separately set forth herein.

334.    All the defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused Ochei damages that were a direct result of those acts.

335.    In furtherance of their object, defendants did two or more overt acts against the plaintiff. Those unlawful overt acts include, but are not limited to the following:

(a)    Defendants Hon. J. Burke strategically maneuvered the coercion of plaintiff by transferring Ochei's case to a new counsel and denying her request to proceed *pro se* in order to prevent her from confronting her accusers, and to further delay prosecution.

(b)    Defendants Erin Choi strategically maneuvered the coercion of plaintiff by repeatedly informing the Court that "The People Are Not Ready" and requesting seven adjournments of trial.

(c)    Defendant, Erin Choi knowingly, intentionally and with reckless disregard for the truth, presented a false Complaint by Officer Kalkau, and false statement by Angela Saidana as part of the People's Supporting Deposition

(d)    Defendants, Hon. J. Burke, and Erin Choi knew or should have known that both Officer Kalkau's Complaint and Angela Saidana's statement were mere

62

fabrication[4].

(e)   Defendant, Angela Saidana misrepresented that Ochei attacked her.

(f)   Defendant, Officer Kalkau, fabricated evidence against Ochei in his Complaint.

(g)   Defendant, Officer Kalkau and his partner did not observe any injury, tear, or laceration on Angela Saidana's body as they claimed in Officer Kalkau's Complaint.

(h)   Defendants Officer Kalkau, Officer Martin, and Officer Supervisor "John Doe" knew that the events leading to Ochei's arrest was a Landlord/Tenant dispute.

(i)   In concert with Angela Saidana's misrepresentation and Officer Kalkau's fabrication, plaintiff was arrested, detained confined and wrongfully prosecuted for a period of 18 months on a charge of third degree assault.

336.   Defendants agreed that the object or course of action was to cause Ochei to vacate her dwelling unit, to surrender or wave her right in relation to her occupancy of the dwelling unit by arresting, detaining, and confining Ochei without probable course, and maliciously charge and prosecute her with crime, and to undermine her efforts in her landlord/tenant litigation.

337.   Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

338.   For the conspiracy, defendants are all therefore liable for injunctive relief, and for actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

---

[4]  Defendants, Hon. J. Burke, and Erin Choi knew or should have known because a review of the surveillance tape monitoring the lobby prior to plaintiff's arrest would have revealed facts to validate Ochei's claim that she was the victim, not the perpetrator at the time of her arrest

## NINETEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

339.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 338 as if separately set forth herein.

340.    Defendant, Erin Choi's initiation of criminal proceeding against Ochei based on mere fabricated complaint and false testimony of Officer Kalkau and Angela Saidana, regardless of whether Ochei was guilty or innocent, and expressly for the collateral purpose of "arming" the landlord in its eviction litigation action, was unconscionable, malicious, intentional, and calculated to inflict grievous emotional distress upon Ochei which it did.

341.    Defendants intentionally and deliberately inflicted emotional distress on Ochei by maliciously prosecuting Ochei, and by abusing the lawful process by unlawful purpose, and by violating Ochei's constitutional rights, and by falsely arresting and imprisoning Ochei, by conspiring against Ochei, and by interfering with Ochei's state and city civil rights by threats, coercion, and intimidation, and knew or should have known that emotional distress was the likely result of their conduct.

342.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community and society.

343.    The actions of the defendants were the cause of Ochei's distress.

344.    Ochei is a reasonable person with good moral character.

345.    The emotional distress sustained by Ochei was severe and of a nature that no reasonable man or woman could be expected to endure

346.    As a result of the defendants' extreme and outrageous conduct, plaintiff was, is, and with a high degree of likelihood, will continue to be emotionally distress due to the intentional exclusion.

347.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

348.    As a result of the Defendants' extreme and outrageous conduct, Ochei has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

349.    For the intentional infliction of emotional distress, defendants are all therefore jointly and severally liable for actual, general, special, compensatory damages, and for punitive damages in amounts appropriate to the proof at trial.

### TWENTIETH CAUSE OF ACTION
### NEGLIGENCE

350.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 349 as if separately set forth herein.

351.    Defendants NYC and Police Commissioner, Raymond W. Kelly, owed a duty to supervise or train the officers and to prevent events such as occurred here, specifically, the false arrest, invasion of privacy, fabrication of evidence, and imprisonment and swearing to charge without probable cause

352.    Defendants NYC and the District Attorney, Robert M. Morgenthau, owed a duty to supervise or train the Assistant District Attorneys and to prevent events such as occurred here, specifically, the unfair and wrongful prosecution of Ochei based on false and misleading Complaint and false statements obtained from Officer Kalkau and Ms Saidana and without probable cause.

353.    Defendants NYC and the Hon. J. Burke, owed a duty to provide equal justice and to prevent events such as occurred here, specifically, the false and wrongful prosecution, and denial of equal justice without an opportunity to confront her accusers and plead her defense.