354.    Defendants, Assistant District Attorney, Erin Choi, Officer Kalkau Officer Martin and Supervisor "John Doe owed a duty to act according to the standard of ordinary care by an assistant district attorney, and police officers, specifically, to conduct investigation, the failure of which was the proximate cause of Ochei's injury.

355.    Defendants, the landlord and Alan Lapes, owed a duty to supervise or train their agents, and employees, including Angela Saidana, and to prevent events such as has been occurring at the dwelling unit where Ochei resides, including but not limited to the events leading to Ochei's arrest, specifically, the unlawfully interference with Ochei's peaceful and quiet enjoyment of her possessory right of her dwelling unit without probable cause.

356.    Defendant, Angela Saidana owed a duty to act according to the standard of ordinary care by an agent or employee of a residential real estate corporation specifically, to conduct investigation of a tenant's request for repair of damage to utilities or maintenance or restoration of service, the failure of which was the proximate cause of Ochei's injury.

357.    Defendants, NYC and Police Commissioner, Raymond W. Kelly, District Attorney, Robert M. Morgenthau, the Hon. J. Burke, the landlord and Alan Lapes breached that duty by failing to act as ordinary police commissioner, district attorney, judge, or landlord would act, specifically, by failing to perform their duties and by failing to adequately control and supervise their officers, agents and/or employees and by failing to properly and adequately administer the investigatory and judicial process.

358.    As a result of those breaches which were the proximate cause of Ochei's injury, Ochei suffered harm and damages.

359.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior*.

360.    For the negligence, defendants are all therefore liable for injunctive relief, and for actual, special, compensatory and punitive damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

TWENTY- FIRST CAUSE OF ACTION
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

361.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 360 as if separately set forth herein.

362.    Defendants continually negligently inflicted emotional distress on the plaintiff.

363.    Defendants had a continually affirmative duty to perform their professional service in such a manner as not to inflict emotional distress on the plaintiff.

364.    Defendants breached their duties to the plaintiff.

365.    The plaintiff never interfered with the defendants obligations under the above-described duties.

366.    Plaintiff suffered not only physical symptomatologies but also, as a consequence of the physical injury, mentally by defendants' breach of their duties.

367.    Plaintiff was, is, and with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of defendants

368.    Defendants, the landlord, Mr. Lapes, Raymond W. Kelly, Robert M. Morgenthau, and NYC are liable under the doctrine of *respondeat superior.*

369.    As a result of the Defendants' negligent conduct, Ochei has suffered and will continue to suffer physical symptomatologies pain and anguish, severe emotional trauma, embarrassment, and humiliation.

370.    Defendants, the landlord, Alan Lapes, Angela Saidana, Officer Kalkau, Officer Martin, Officer Supervisor "John, Doe" the Hon. J. Burke, Raymond W. Kelly, and NYC are all

therefore liable for injunctive relief, and for actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate to the proof.

## DAMAGES

371.   Plaintiff contends that by impairing the liberty interest in reputation, the property interest in tenancy and nursing license, and the safety and economic well-being of plaintiff, defendants:

(a)   abuse of law enforcement process and the judicial system to harass and intimidate plaintiff violated the constitutional rights of plaintiff.

(b)   denial of fair and speedy trial under the guise of plea bargain offer violated the constitutional rights of plaintiff.

(c)   automatic assignment of counsel to criminal defendants without considering conflict of interest issue and without counseling plaintiff violated the constitutional rights of plaintiff.

(d)   assignment of counsel who do not represent plaintiff's interest and arbitrary denial or ignoring of plaintiff's motion to proceed *pro se* violated the constitutional rights of plaintiff.

(e)   arbitrary adjournments of trial while denying plaintiff an opportunity to plead her defense violated the constitutional rights of plaintiff.

372   Plaintiff contends that as a result of the defendants' violating plaintiff's statutory and constitutional rights, plaintiff has been forced to expend considerable sums of money seeking relief from the defendants' unlawful acts in order to repair the damage to her good name and reputation.

373.   Plaintiff contends that plaintiff has incurred and will incur loss of revenue that

Clause of the United States;

(f)     declaring that the plea bargain offer as used by the defendants; denial of motion to

proceed *pro se*; and ineffective assistance of counsel violated the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution;

(g)     declaring the discriminatory acts and practices complained of herein are in

violation of Federal Civil Rights Act, as amended, 42 U.S.C §§ 1981, 1982, 1983,

the New York State Human Rights Law, as amended, Executive Law § 290 *et*

*seq.*, the New York City Human Rights Law, New York, Administrative Code

§ 8-107 *et seq.*, the Common Law Statute, and the Fair Housing Act, as amended,

42 U.S.C. § 3601 *et seq.*;

(h)     enjoining and permanently restraining the landlord from using public entities,

private entities, law enforcement and judicial process to harass and intimidate

their tenants, including plaintiff;

(i)     enjoining defendants, the landlord, their agents, employees, and successors, and

all other persons in active concert or participation from:

    (i)     directly or constructively refusing to rent after a *bona fide* offer, or

refusing to negotiate for the rental of, or otherwise making unavailable or

denying, a dwelling to plaintiff because of her race, color or national

origin,

    (ii)    discriminating against plaintiff in the terms, conditions, or privileges of

rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of plaintiff's race, color or national origin,

    (iii)   coercing, intimidating, threatening, or interfering with plaintiff in the

exercise or enjoyment of any right granted or protected by the Fair
Housing Act, as amended;

(j)    enjoining defendants, the landlord, their agents, employees, and successors, and
all other persons in active concert or participation to:

(i)    make all necessary modifications to its policies, practices, and procedures
of instituting and continuing criminal proceedings,

(ii)    make all necessary modifications to the landlord's policies, practices, and
procedures of offering rental of dwellings to the public, including plaintiff,

(iii)    train all persons involved in the investigatory phase of the criminal
process, e.g. police officers and other law enforcement officers on how to
investigate witnesses, otherwise, make proper arrest, process individuals
under arrest and file a valid complaint,

(iv)    train all persons involved in the judicial phase of a criminal process e.g.
assistant district attorneys and judges, on how to bring particular criminal
charges against a criminal defendant, how to present evidence to a grand
jury, and how to evaluate and organize evidence presented by police
officers and other law enforcement officer,

(v)    train all management, agents, and employees of the landlord on fair
housing laws,

(vi)    promptly surrender the surveillance video monitoring the lobby, and each
floor of the subject premise, including the fourth floor, upon request by
plaintiff, person acting as plaintiff's representative, and law enforcement
officials,

(vii)    make all necessary repairs and provide services to maintain the subject premise in a safe habitable condition for the tenants, including but not limited to changing the locks on the community bathroom doors to prevent easy access by unlocking the doors from outside when occupied and in use by a tenant, and keeping the community bathroom in such condition as to prevent health and safety hazard,

(viii)    prevent allowance of strange men and women to share community bathrooms with defective and unsafe locks;

(ix)    allow monitoring of the landlord's use of the subject premise for homeless shelter,

(x)    allow monitoring of conduct of all persons residing at the subject premise, for safety violations and creating hazardous conditions that endanger the welfare and health status of other tenants with respect to the use of community utilities and individually owned equipments including without limitation, the bathrooms, hallways, elevators, kitchen, excessive noise from stereo sound system, flooding inside the bathroom floors, clogging of toilet bowls, and littering the bathroom floors with dirty, used toilet tissues,

(xi)    allow monitoring of the landlord's application process and rental decisions,

(xii)    retain records of the use of the subject premise as a homeless shelter, and as a rental property for tenants residing under rent regulation law,

(xiii)    develop written procedures on rental processes and fair housing policy to

be distributed to all agents, employees, current tenants, and rental

applicants,

(xiv)  undertake active efforts and steps to ensure that all current and future

tenants seek out and obtain assistance from defendants and are assisted in

a meaningful way to rent apartments or rooms, regardless of race, color or

national, and

(xv)  establish a system so that the landlord's agents, and employees can be

tested for compliance with the NYC housing codes and for unlawful

discriminatory practices;

(j)  enjoining and permanently restraining these violations of 42 U.S.C §§ 1981, 1982,

1983 of the Civil Rights Act, as amended, the New York State Human Rights

Law, as amended, Executive Law § 290 *et seq*., the New York City Human Rights

Law, New York, Administrative Code § 8-107 *et seq*., the Common Law Statute,

and the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*.;

(j)  directing defendants to take such affirmative action as is necessary to ensure that

the effects of these unlawful discriminatory practices are eliminated and do not

continue to affect plaintiff's tenancy;

(k)  directing defendants to place plaintiff in the position she would be in but for

defendants' discriminatory, and unlawful conduct against plaintiff, and to make

her whole for all earnings and other benefits she would have received but for

defendants' discriminatory treatment, including but not limited to wages,

compensation, equity interests, and other lost benefits;

(l)  directing defendants to pay plaintiff compensatory damages for any loss of

equitable, including injunctive and declaratory relief as may be required in the

interest of justice;

(t)     retaining jurisdiction for the enforcement of the injunctive orders.

## NOTICE OF DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on issues triable before a jury.

Dated: New York, New York
      April 2, 2010

Respectfully Submitted

JOAN OCHEI, *pro se*
P.O Box 1399
Madison Square Station
New York, NY, 10159
(212)262-7882 – Telephone
(212) 262- 7882 – Fax
joaniochei@verizon.net

Alternative Address

317 West 45th Street,
Apt. 420
New York, NY, 10036

# EXHIBIT A

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK:  PART B

------------------------------------------------------------ X

THE PEOPLE OF THE STATE OF NEW YORK,                   :

           -against-                                                          :

                                                  :

Joan Ochel,                                                                        :

           Defendant.

------------------------------------------------------------ X

*SUBPOENA*
*DUCES TECUM*

DKT. NO.: 2008NY036494

*IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK*

TO:   **Robert Mendez**
     **317 West 45th Street**
     **New York, NY 10036**
     **(212) 246-8581**

**GREETINGS:**

     **WE COMMAND YOU**, that all business and excuses being laid aside, to produce via mail or in person at Part B, 4th floor, Criminal Court of the City of New York, at 100 Centre Street, New York, New York, on or before the twentieth of June, 2008 at 9:30 o'clock in the morning, certain documents, reports, etc., listed below in the above-captioned case.  *Note bene*, your personal appearance is not necessary.

**ITEMS REQUIRED:**

     Any and all photos and video surveillance inside the premises of 317 West 45th Street on May 14, 2008 between the hours of 7:00 a.m. and 10:00 a.m.

     Any and all incident reports relating to tenant, Joan Ochel.

     This subpoena should also serve as notice not to destroy any documents, records, blood samples, test results, or any other items, that have any connection to this case, even if such would otherwise be the normal business practice.

     Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued and all damages sustained by reason of your failure to comply.

     Please deliver materials to Part B, 100 Centre Street, New York, New York.  Please clearly label the materials as returnable to **The Legal Aid Society, care of Laura H. Stasior.**

*Dated:* New York, New York
June 4, 2008

The Legal Aid Society
By: LAURA H. STASIOR
Attorney for Defendant
49 Thomas Street
New York, New York 10013

(212) 298-5365

EXHIBIT B

To: Laura Stasior
From: Sarah Finkelstein
Date: 6/6/08
RE: Joan Oche

I tried to deliver the subpoena for the second time. Robert Mendez and Angela were not there.

Maribelle, the front desk clerk, called Robert to see if she could sign receipt for the document.

Robert told her over the phone that he had looked at the tapes and the cameras were not working that morning, there was nothing on the tapes. Although I had called Robert numerous times, he never communicated this information to me before or directly.

Maribelle refused to sign for the subpoena or take any responsibility for getting it to Robert.

I left a copy of the subpoena with her anyway. She put it on a pile of papers she said were incoming mail, but said things go missing from there all the time and by Monday there was not telling where it could be.

To: Laura Stasior
From: Sarah Finkelstein
Re: Joan Ochel
Where: 317 West 45th Street

### Angela Saidana (CW)

- NOTE: very suspicious of me, asked several times "wait, who do you work for?"
- Her office is to the left of the front door. I spoke with her directly outside her office where she says the assault occurred.
- According to Ms. Saidana, the morning of the incident was not the first time Ms. Ochel came into her office to complain about something.
- I asked if there was anyone else present who witnesses the incident. She said no.
- I said I was under the impression that one of the case worker's from the SRO office was there and that Ms. Ochel called 911 from the SRO office. She said that the case worker didn't see what happened because their office was around the corner, on the other end of the lobby.
- I asked her who the case worker was and if I could talk to her. She said no, that she didn't have anything to do with the SRO office and that the SRO office didn't have anything to do with Ms. Ochel because she is not one of their clients.

#### Video tape

- While I was speaking with Angela, I noticed a security camera on the wall facing the entryway. I noticed another camera around the corner near the elevator and a reflective mirror on the other side of the lobby.
- I asked Ms. Saidana about the security cameras. She said they should have been working on May 14th and that she would be the person who has the tapes. I would need to get the permission of her boss, **Robert Ramirez,** (manager of the Aladdin Hotel) (212-246-8581) before I could view/copy the security camera footage. She gave me his number but said he was not there.
  - 6/29 – I called Robert Ramirez @ 212- 246-8581 around 2:00. He said he was in the middle of something, but would call me back. I have not heard back from him yet.

### Carole Lee (SRO case worker, witness)

- NOTE: In the future, Carole would like to be contacted through Robert Rumore (see below)
- I spoke with Carole in Robert Rumore's office, she wanted to say everything she was going to say in front of him.
- Carole identified two colleagues who heard what she heard and saw what she saw -- **Shevant** and **Elizabeth.** According to Carole, the three of them were all in the SRO office when they heard noise (people arguing) and went out into the lobby to see what was going on. They didn't see how everything started. When they got to the lobby they saw Angela pushing Ms. Ochel and Ms. Ochel falling to the floor.

### Robert Rumore

- 212-957-8212
- Robert gave me a little background about the building – it became SRO housing about 8-9 months ago. The majority of the apartments are occupied by SRO program participants. Ms.

Ochel is one of the few remaining tenants and is not a SRO participant. A budget hotel/hostel (The Aladdin Hotel) is also run out of the building.

### Steven B. (SRO case worker)
- NOTE: very helpful
- He saw me speaking with Ms. Ochel in the hall and said he hoped there was something we could to help her. He said that people in his office (the SRO office) had been talking about what happened between Ms. Saidana and Ms. Ochel a lot recently. He said that building management staff members, such as Ms. Saidana, were nasty and incompetent in general (drawing a distinction between the SRO staff and the building management staff).
- He overheard Ms. Ochel tell me that the reason she stopped into Ms. Saidana's office on May 14th was to tell her about a hot water problem in the shared bathroom on the fourth floor. Steven said that the building is in horrible condition and that he wouldn't be surprised if Ms. Ochel's hot water had really not been working for two weeks, as she claimed.

### Joan Ochel
- lived in the building for 20 years
- just started seeing Angela in the building about a year ago.
- keeps to herself -- doesn't talk to anyone in the building - ("they aren't here for me, they are for people with the program") (doesn't answer door -- I had to knock *several* times).
- I asked Ms. Ochel if she had had any negative interactions with Angela prior to the incident. She mentioned that the last two times she called the cops (in January and February), Angela stopped the officers in the lobby, accompanied upstairs, and then listened to their conversation with Ms. Ochel.
- She said that on the morning of the incident, she went into Ms. Saidana's office to tell her that the hot water in her bathroom was not working and had not been working for two weeks. Ms. Ochel said that she used to go speak with the janitors directly when something broke or was not working, but that Ms. Saidana had told her to come to her next time something happened.

2

To: Laura Stasior
Date: 6/10/08
From: Sarah Finkelstein
RE: Joan Ochei, housing court case/ landlord-tenant dispute

**Timeline:**

May 28th, 2008 – Court date

January 11, 2008 – Notice to Cure dated

January 14, 2008 – Notice to Cure served

January 24, 2008 – date by which said violation of tenancy (bringing buckets of water to the living room to shower, causing big leaks to the apartment below) must cease or tenancy would be terminated.

February 1, 2008 – Notice of Termination dated

February 16, 2008 – Notice of Termination served

February 26, 2008 – date on which term of tenancy shall expire due to failure to comply with Notice to Cure and service of Notice of Termination.

Ms. Ochei holds over.

Landlord commences summary proceeding to evict.

May 14th, 2008 – Petition requesting final judgment awarding possession of the premises to the landlord; the issuance of a warrant to remove Ms. Ochei, a judgment for fair value of use and occupancy against "Respondents Tenents"(?), and the costs and disbursements of this proceeding.

May 22, 2008 – Shafaq Islam, Staff Attorney for Goddard Riverside Community Center West Side SRO Law Project, (212) 799- 9638, writes letter stating that Ms. Ochei came into office seeking representation, but that they are unable to review her case for representation before Ms. Ochei's may 28th court date. Requests adjournment.

May 28th, 2008 – original court date

**Housing Court Case Contacts:**
Alan Lapes
Managing Agent
317 Aladdin Hotel Corp.

Rattner & Waide

Attorneys for Petitioner
26 Broadway, 21st Fl.
New York, NY 10004
(212) 742-9244

Shafaq Islam
Staff Attorney
Goddard Riverside Community Center West Side SRO Law Project
(212) 799- 9638

**Notes:**
6/10/08 – called Mr. Islam, left message.
6/10/08 – called Civil Court of the City of New York Count of New York – Housing Part at
        (646) 386-5750... entered index number (69181/08), no information in computer
        system about that case at this time...

**6/12/08** – Mr. Islam was not available. The person who answered the phone, after I gave them
Ms. Ochei's name told me the case had been closed. When I asked what that meant (whether the
case had been resolved or whether the SRO Law Project had declined representation) she said I
would have to speak to Mr. Islam for more information.

**6/12/08** - Got through to Mr. Islam. He said he that he needed to get permission from Ms. Ochei
to speak with me about her housing court case. I asked if he could tell me first whether or not he
was in fact representing her on that matter and he said he still wanted to verify some things with
Ms. Ochei first.

**6/12/08** – Searched *E-Court's – WebHousing*. It appears that an adjournment was granted on
May 28, 2008. The new court date is Jun 20, 2008 in Part A, Room 523.

**6/12/08** – Spoke with Mr. Islam  (Staff Attorney with the SRO Law Project). He confirmed the
adjournment information above. In the next week the SRO Law Project is going to contact the
Aladdin Hotel's attorneys to try to get them to drop the case. Ms. Ochei does not deny brining
buckets of water into her room for purposes such as cooking, but there is evidence to suggest that
these buckets were not the source of any water damage or leakage. In fact, there a numerous
maintenance requests and complaints documenting a broken radiator leaking water in Ms.
Ochei's apartment which predate the Notice to Cure.

If Mr. Islam is unsuccessful in persuading the landlord to drop the case, the SRO Law Project
will review the file next Tuesday at their weekly staff meeting and determine whether or not they
will represent Ms. Ochei in the case as it proceeds.

Mr. Islam asked if I had any information which should make him even more suspicious of the
landlord's motives for trying to evict Ms. Ochei. I shared with him all the background
information we have on the building, Ms. Ochei's tenancy, and the various interests at stake ( the
management, the residents, the SRO clients, the SRO staff, the hotel guests etc...). I mentioned
that when I visited Ms. Ochei at her apartment it become very clear to me that she is desperately

in need of people to advocate on her behalf. I told him about the conversation I had with one of the SRO workers in which he expressed concern for Ms. Ochei and frustration over not being able to do anything to help her since she was not an SRO client.

Mr. Islam cannot guarantee anything, but said that in all likelihood the SRO Law Project will decide to represent Ms. Ochei in this case.

Mr. Islam said he would contact me next Tuesday or Wednesday to let me know if he made any progress on getting the case dropped and if the SRO Law Project will represent Ms. Ochei if the case proceeds.

**6/12/08** – I also spoke with Peter Chapman. I told him about my previous "attempts" to serve the subpoena. He thinks that I may have actually affected service when I left the subpoena with Maribelle even though she refused to sign for it or accept any personal responsibility for making sure that it got to Robert.

**6/18/08** – I spoke with Shafaq Islam. He informed that the SRO Law Project will be representing Ms. Ochei in her housing court case. They are filing a motion to dismiss before her next court date on 6/20. I will call at the beginning of next week to find out what happened in court on the 20th.

EXHIBIT C

June 12, 2008

**Complex VI**

**Case Number: 98-2008**

**Docket Number: 2008NY036494**

**Defendant: Joan Ochei**

**Attorney: Laura Stasior**

**Investigator: Peter H. Chapman**

**Details:** In an attempt to serve a duces tecum subpoena on the Aladdin Hotel Corp. at 317 W. 45th. St. on June 11, 2008, had a conversation with an Aladdin employee who failed to identify herself by name or title. She refused to accept the subpoena, stating that the only person who could accept the subpoena was Alan Lapes, who was unavailable. I argued that the subpoena was for records and not an actual person. She would not accept the subpoena.

I asked if Mr. Lapes had a secretary or a supervisor who might be able to assist me. I was told that he did not.

The unidentified employee telephoned someone, presumably a supervisor. When she hung up, she informed me that she had been instructed not to accept the subpoena.

I attempted to ascertain when Mr. Lapes would be available for service of said subpoena. I was informed that he had no schedule and was at the hotel at irregular times.

June 11, 2008, at approximately 4PM had a telephone conversation with Ms. Stasior regarding my efforts to serve this subpoena. A written narrative was requested.

Peter H. Chapman, Investigator

# EXHIBIT D

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOAN OCHEL.

Defendant.

CERTIFICATE OF READINESS

DOCKET NO.    2008NY036494

Robert M. Morgenthau
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Adjourned: 8/7/08

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: B

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOAN OCHEL,

Defendant.

CERTIFICATE OF
READINESS

Dkt. No.        2008NY036494

    Erin Choi, an Assistant District Attorney in the County of New York, hereby
certifies that the People are ready for trial in the above-entitled action.

Dated:      New York, New York
            June 3, 2008

Respectfully submitted,

Erin Choi
Assistant District Attorney
212 335-4287

CRIMINAL COURT OF THE CITY OF NEW YORK
PART B, COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | SUPPORTING DEPOSITION |
| vs. | 100.20 C.P.L. |
| JOAN OCHEL | Docket No        2008NY036494 |
| Defendant | Adjourned Date    8/7/2008 |

I, Angela Saldana, of an address known to the New York County District Attorney's Office, have read the attached criminal complaint. The facts in this complaint that are attributed to me are true, and I know these facts from my personal knowledge.

False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the penal law

_Angela Saldana_

Signature                                    Date

EXHIBIT E

**CRIMINAL COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK**

Page 1 of 1

THE PEOPLE OF THE STATE OF NEW YORK      MISDEMEANOR
-against-

1. Joan Ochel (F 49)

874250

Defendant.

Police Officer Brendan Kalkau, shield 10287 of the 018 Precinct-Midtown North Precinct, states as follows:

On May 14, 2008, at about 08:10 hours at 317 West 45th Street in the County and State of New York, the Defendant committed the offenses of:

1.   PL120.00(1)   Assault in the Third Degree
(1 count)

the defendant, with intent to cause physical injury to another person, caused such injury to another person.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Angela Saidana, of an address known to the District Attorney's Office, that informant observed the defendant repeatedly strike informant about informant's body, to wit, informant's arms, face and chest, with defendant's open fist, causing informant to suffer lacerations to informant's chest and left arm, swelling and redness to informant's left eye, and causing informant to suffer substantial pain.

**False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.**

_Po Kaller_                          _5/14/08   1550_
Deponent                          Date and Time

ACT 5 Version 4.3.0 Created on 05/14/08 3:47 PM

2008NY036494

# EXHIBIT F

CIVIL COURT OF THE CITY OF NEW YORK
    COUNTY OF NEW YORK
    HOUSING PART A, RM. 523
    JULY 24, 2008

INDEX NO. 069181/2008
MOTION SEQUENCE NO. 001

DECISION/ORDER

---

317 ALADDIN HOTEL    CORP........
              PETITIONER(S)

       AGAINST

OCHEI         JOAN
              RESPONDENT(S)

PRESENT:

JUDGE

---

RECITATION, AS REQUIRED BY CPLR 2219(A), OF THE PAPERS CONSIDERED IN
REVIEW OF THIS MOTION OF RESP / GRANTING MOTION TO DISMISS

| PAPERS | NUMBERED |
|---|---|
| NOTICE OF MOTION AND AFFIDAVITS ANNEXED..... | |
| ORDER TO SHOW CAUSE AND AFFIDAVITS ANNEXED..... | |
| ANSWERING AFFIDAVITS..... | |
| REPLYING AFFIDAVITS..... | |
| EXHIBITS..... | |
| STIPULATIONS..... | |
| OTHER _____ P + A 10/46 - 10/48 _____ | |

UPON THE FOREGOING CITED PAPERS, THE DECISION/ORDER IN THIS MOTION I
AS FOLLOWS:

*Motion granted on default +
without opposition. Petitioner is dismissed
Pet. ____ was failed too appear @ 10:47 AM non
has opposition been filed as scheduled = 6/30/08 stip*

7/24/08
DATE

HON. DAVID J. KAPLAN
JUDGE, CIVIL/HOUSING COURT

ADJOURNMENTS

EXHIBIT G

# CIVIL COURT OF THE CITY OF NEW YORK

County of NEW YORK

Date 8/14/09          Part 15

Index No. L&T: 262/09

Page   1   of   1

Hon.   KRAUSE

JOAN OCHEI

*Petitioner(s),*

against

ALAN LAPES

*Respondent(s)*

## STIPULATION OF SETTLEMENT

*The parties understand that each party has the right to a trial, the right to see a Judge at any and the right not to enter into a stipulation of settlement. However, after review of all the is the parties agree that they do not want to go to and instead agree to the following stipulation settlement of the issues in this matter.*

| Party (please print) | Added/Amended or Deleted | Appearance | No Appearance | No A |
|---|---|---|---|---|
| Petitioner | | | | |
| Respondent 1 | | | | |
| Respondent 2 | | | | |
| Respondent 3 | | | | |

IT IS HEREBY ORDERED AND ADJUDGED THAT:

(1) RESPONDENT SHALL NOT USE FORCE AGAINST PETITIONER, INTENTIONALLY INTERRUPT ESSENTIAL SERVICES ISSUING FRIVOLOUS LATE CASES, OR CAUSE OR PERMIT ACTS OR OMISSIONS THAT SUBSTANTIALLY INTERFERE WITH OR DISTURB THE COMFORT, PEACE OR QUIET OF THE PETITIONER.

(2) UPON DEFAULT OF PARAGRAPH (1) PETITIONER MAY RESTORE THIS PROCEEDING FOR ALL APPROPRIATE RELIEF.

(3) RESPONDENT SHALL PAY $1,000 IN CIVIL PENALTIES ON OR BEFORE 8/28/09 TO "DHPD", 100 GOLD ST. 7TH FLOOR, NY, 10038: ATTN. MARK BERR. THIS PAYMENT IN NO MANNER CONSTITUTES AN ADMISSION OF WRONGDOING.

(4) IF RESPONDENT DEFAULTS IN ANY MANNER WITH THE TERMS SET FORTH IN PARAGRAPH (5) DHPD SHALL AFTER EIGHT DAYS WRITTEN NOTICE ENTER JUDGMENT AGAINST RESPONDENT IN THE AMOUNT OF $5,000. SAID JUDGMENT SHALL BE A LIEN ON THE PROPERTY AT BLOCK 108, LOT 21